# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 1997

IN THE MATTER OF S.L.M., a Youth      No. 96-576

IN THE MATTER OF S.T., a Youth      No. 96-337

Appeals From:      District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

IN THE MATTER OF J.L.C., a Youth      No. 96-220

Appeal From:      District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable John Warner, Judge presiding.

IN THE MATTER OF J.A.T., a Youth      No. 96-546

IN THE MATTER OF L.D., a Youth      No. 96-547

Appeals From:      District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Daniel P. Buckley (argued); Berg, Lilly, Andriolo & Tollefsen, Bozeman, Montana (96-576)
D.E. Pomery (argued), Attorney at Law, Bozeman, Montana (96-337)
John Keith, Attorney at Law, Great Falls, Montana (96-220)
Roberta A. Drew, Yellowstone County Defender's Office, Billings, Montana (96-546 and -547)

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Cregg W. Coughlin (argued), Helena, Montana

Argued: November 6, 1997
Submitted: November 14, 1997
Decided: December 30, 1997

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

The appellants in these five appeals challenge the Extended Jurisdiction Prosecution Act, §§ 41-5-1601 through -1607, MCA, (EJPA) as being unconstitutional under the equal protection, due process and double jeopardy clauses of the United States and Montana constitutions, as well as under Article II, Section 15 of the Montana Constitution. Although there are some factual differences in how each prosecution evolved as well as differences in the conclusions reached by the various District Courts, the constitutional issues presented encompass each of the appeals. Accordingly, we consolidate these appeals for purposes of an opinion. Since we determine that the EJPA violates Article II, Section 4 (equal protection) of the Montana Constitution and Article II, Section 15 (rights of minors) of the Montana Constitution, we need not address the double jeopardy and due process challenges.

PROCEDURAL BACKGROUND OF EACH APPEAL

I.  In the Matter of S.L.M., Cause No. 96-576, Gallatin County:

The Youth S.L.M. was charged with perjury and the criminal sale of dangerous drugs, both punishable as felonies if committed by an adult. The State alleged that S.M. sold $150 worth of marijuana to an undercover agent. At the time of the offense, S.M. was under the age of 18 years. The State requested extended jurisdiction under the EJPA. The District Court held a hearing and granted extended jurisdiction over the charge of criminal sale of dangerous drugs, but did not extend jurisdiction over the charge of perjury, an offense which

2

is not enumerated for extended jurisdiction under the EJPA. At the disposition hearing, the Youth argued that the EJPA violates the equal protection, double jeopardy, and due process guarantees of the Montana and United States constitutions. The District Court rejected the Youth's contentions and committed him to the Department of Corrections until he reaches the age of 19. The District Court then entered and stayed a Sentence and Judgment of 10 years on the charge of criminal sale of dangerous drugs. The Youth filed a motion for correction of sentence or reconsideration. That motion was denied, and the Youth appealed to this Court.

II.  In the Matter of J.L.C., Cause No. 96-220, Hill County:

The Youth J.L.C. was charged with negligent homicide as the result of a car accident in which J.L.C. was driving a vehicle while under the influence of drugs and alcohol. The vehicle rolled, and one of the two passengers died from injuries received. J.L.C. was 17 years of age at the time of the incident. At the request of the county attorney, the District Court granted extended jurisdiction over the charge of negligent homicide. The Youth pled guilty to negligent homicide, and the court, by way of a juvenile disposition, placed the Youth on formal probation until he reaches the age of 21. In addition, under the EJPA, the court imposed an adult sentence committing the Youth to the Department of Corrections for a period of 5 years, suspended. The Youth filed a notice of appeal to this Court.

III. In the Matter of S.T., Cause No. 96-337, Gallatin County:

S.T. was charged in Youth Court with eight offenses, including two burglaries. He admitted to having committed each of the offenses. The State filed a motion to have the case designated an extended jurisdiction prosecution. S.T. challenged the EJPA as unconstitutional under the double jeopardy clause, the due process clause and Article II, Section 15 of the Montana Constitution. The District Court rejected the constitutional challenges and imposed a juvenile disposition (chemical dependency treatment, random urinalysis and restitution) under § 41-5-523, MCA, of the Youth Court Act as well as an adult sentence under § 46-18-201, MCA (ten years to the Department of Corrections, stayed).

Based upon a report of probation violations, the State subsequently filed a request with the court to impose the adult portion of the sentence. S.T. was arrested pursuant to a bench warrant. After initially denying the violations, S.T. admitted the violations of probation. The court then imposed the sentence of 10 years with the Department of Corrections, suspended 5 years, and imposed conditions for the suspended portion of the sentence. S.T. was credited with 91 days of incarceration served under the juvenile disposition.

IV. In the Matter of J.A.T., Cause No. 96-546, Yellowstone County and
    In the Matter of L.D., Cause No. 96-547, Yellowstone County:

J.A.T. was charged in Youth Court with assault with a dangerous weapon and misdemeanor theft. The State requested extended jurisdiction for the charge of assault.

*J.A.T. admitted the allegations in the petition and proceeded to challenge the constitutionality of the EJPA.* The court ordered J.A.T. committed to the Department of Corrections until the age of 19. The court stayed the commitment on condition that J.A.T. continue to reside with his grandfather and attend school. The court held the adult portion of the sentence in abeyance pending a ruling on the Youth's motion challenging the constitutionality of the EJPA.

Subsequently, the State filed a petition charging the Youth with possessing drug paraphernalia and, on that basis, sought to revoke the prior suspension of commitment. J.A.T admitted the allegations, and the court placed him on probation for one year.

In a separate matter, in November of 1995, the State charged L.D. with being a delinquent youth for committing deliberate homicide. The State later amended its petition to charge negligent homicide as an alternate charge. L.D. admitted to the charge of negligent homicide, but challenged the constitutionality of the EJPA. The court declared L.D. a delinquent youth and committed him to the Department of Corrections until age 19. The court took the issue of whether to designate the case as one for extended jurisdiction under advisement.

On July 19, 1996, the court issued a consolidated order in both L.D. and J.A.T. declaring the EJPA unconstitutional on double jeopardy, due process and equal protection grounds. The State appeals from that decision.

## ISSUES PRESENTED

1. Does the EJPA violate the equal protection clauses of the United States Constitution and/or the Montana Constitution?

2. Does the EJPA violate the provisions of Article II, Section 15 of the Montana Constitution?

3. Does the EJPA violate the double jeopardy clauses of the United States Constitution and/or the Montana Constitution?

4. Does the EJPA violate the due process clauses of the United States Constitution and/or the Montana Constitution?

## DISCUSSION

I. Overview of the Extended Jurisdiction Prosecution Act

In 1995, the legislature substantially revised the Montana Youth Court Act, including amending the Declaration of Purpose to effectuate the following purpose:

> to prevent and reduce youth delinquency through immediate, consistent, enforceable, and avoidable consequences of youths' actions and to establish a program of supervision, care, rehabilitation, detention, competency development, community protection, and, in appropriate cases, restitution as ordered by the youth court[.]

Section 41-5-102(2), MCA (1995).

As part of the broad 1995 revision of the Youth Court Act, the EJPA was enacted. The EJPA is now codified at Title 41, Chapter 5, Part 16, MCA. Although the youths herein

6

were all sentenced under the EJPA as it was enacted in 1995, the 1997 legislature amended the EJPA to provide for more procedural due process in revocation of stay proceedings. See § 41-5-1605, MCA. If the State were to initiate revocation of stay proceedings against any of the appellants, the 1997 amendments would inure to their benefit. However, for purposes of our equal protection analysis, the sentencing provisions of the Act remain the same in that they still provide for imposition of an adult sentence in addition to a juvenile disposition. Accordingly, we will refer to the Act as amended and codified at Title 45, Chapter 5, Part 16, MCA.

A youth court case may be designated an "extended jurisdiction juvenile prosecution" when the offender is at least 14 years of age, the county attorney requests that the case be designated an extended jurisdiction juvenile prosecution, a hearing is held, and the youth court designates the case as such. Section 41-5-1602, MCA. If, after a hearing, the county attorney has shown by clear and convincing evidence that designating the case an extended jurisdiction prosecution serves the public safety, the youth court may so designate. Section 41-5-1603(3), MCA.

A case may also fall under the EJPA if the youth is alleged to have committed one or more of the offenses listed under § 41-5-206, MCA, and the county attorney designates the case as an extended jurisdiction prosecution. Section 41-5-1602(1)(b), MCA. The case may also fall under the EJPA if the youth was at least 12 years of age, allegedly committed an offense which, if committed by an adult, would be punishable as a felony, and allegedly used

7

a firearm in the commission of the offense. Section 41-5-1602(1)(b), MCA. Additionally, the case may be designated an extended jurisdiction prosecution if, after a hearing on the motion to transfer the case for prosecution in district court under § 41-5-206, MCA, the youth court designates the case an extended jurisdiction prosecution. Section 41-5-1602(1)(c), MCA.

After the case is designated an extended jurisdiction prosecution, the case proceeds to an adjudicatory hearing as provided in § 41-5-1502, MCA. If the youth admits to committing, or is adjudicated to have committed, an offense which would be a felony if committed by an adult, the youth court must impose one or more of the juvenile dispositions under § 41-5-1512, MCA, and any sentence which could be imposed on an adult offender of the same offense. The statute expressly provides that execution of the sentence imposed "must be stayed on the condition that the youth not violate the provisions of the disposition order and not commit a new offense." Section 41-5-1604(1)(b), MCA.

If the court is subsequently informed that any condition of the disposition has been violated, or if it is alleged that the youth has committed a new offense, the court may, without notice, order the youth be taken into custody. Section 41-5-1605(1), MCA. The district court must then notify the youth, in writing, of the reasons alleged for revocation of the stay. Section 41-5-1605(1), MCA.

If the youth challenges the reasons for the revocation, the court must hold a hearing at which the youth is entitled to notice, an opportunity to be heard, right to counsel, and the

right to cross-examine witnesses. Section 41-5-1605(2), MCA. If, after the hearing, the court finds by a preponderance of the evidence that the conditions of the stay have been violated or that the youth has committed a new offense, the court shall provide a written statement of the reasons for the revocation and shall: 1) continue the stay and place the youth on probation; 2) impose one or more dispositions under §§ 41-5-1512 or -1513, MCA, if the youth is under age 18; or 3) subject to §§ 41-5-206(6) and (7), MCA, order execution of the sentence imposed under § 41-5-1604(1)(b), MCA. Section 41-5-1605(2)(b), MCA.

Upon revocation and disposition, the youth court shall transfer the case to the district court. Section 41-5-1605(3), MCA. Upon transfer, the offender's extended jurisdiction juvenile status is terminated, and the youth court jurisdiction is terminated. Section 41-5-1605(3), MCA. Ongoing supervision of the offender is with the Department of Corrections rather than with the youth court's juvenile probation services. Section 41-5-1605(3), MCA.

II. Standing

The State contends that certain of the youths lack standing to challenge the constitutionality of the EJPA. The youths contend that the EJPA violates equal protection by subjecting them to a longer period of incarceration than that permitted for an adult offender. The State points out, however, that the adult portion of the sentence is only triggered if the youth violates the terms of his juvenile disposition and the stay of the adult sentence is revoked. Those youths who have not had the stay revoked have not been

9

adversely affected by imposition of an *adult* sentence and thus, the State contends, lack standing.

We conclude that the youths, each of whom have been sentenced under the EJPA, have standing to challenge its provisions. We recently addressed the question of standing in Gryczan v. State (Mont. 1997), 942 P.2d 112, 54 St.Rep. 699. We reiterated the criteria for determining standing: 1) the complaining party must clearly allege past, present or threatened injury to a property or civil right; and 2) the alleged injury must be distinguishable from the injury to the public generally, but need not be exclusive to the complaining party. Gryczan, 942 P.2d at 117. Gryczan involved a constitutional challenge by six homosexuals (the respondents) to the statutory prohibition on deviate sexual conduct. See § 45-5-505, MCA. The State contended that because the statute had never been enforced against consenting adults, there was no "threatened injury" and, thus, no standing. Gryczan, 942 P.2d at 116.

This Court, despite the fact that the respondents had not been arrested or prosecuted, held that they were precisely the individuals the statute was designed to impact. Gryczan, 942 P.2d at 119. Furthermore, we noted that nothing prevented a county attorney from exercising his or her discretion and choosing to prosecute. Since the legislature had not disavowed the statute, we concluded that the respondents "suffer a legitimate and realistic fear of criminal prosecution along with other psychological harms. Respondents are precisely the individuals against whom the statute is intended to operate. This is sufficient

10

to give Respondents standing to challenge the constitutionality of the statute." Gryczan, 942 P.2d at 120.

The threat of injury to the youths herein is even more apparent than that to the respondents in Gryczan. There is no question but that the youths are among the individuals against whom the EJPA is directed. Further, the youths have not only been prosecuted, but have also been sentenced under the EJPA. Although the adult sentences of some of the youths may be presently stayed on the condition that they comply with their juvenile dispositions, they suffer a "legitimate and realistic" fear that the adult sentence will be imposed should they violate the disposition. We conclude that the youths, regardless of whether their stays have been lifted, have standing to challenge the constitutionality of the EJPA on equal protection grounds.


III.  Does the EJPA violate the equal protection clauses of the United States Constitution and/or the Montana Constitution and the rights of minors under Article II, Section 15 of the Montana Constitution?

Resolution of this issue involves a question of constitutional law. Accordingly, we review to determine whether the court's interpretation of the law is correct. State v. Schnittgen (1996), 277 Mont. 291, 295, 922 P.2d 500, 503.

Equal protection challenges to legislation are reviewed under one of three different levels of scrutiny. When the legislation in question infringes upon a fundamental right or discriminates against a suspect class, we employ the most stringent standard, strict scrutiny.

11

"Strict scrutiny has been limited to those instances when either a fundamental right has been infringed or a suspect classification has been established. Strict scrutiny requires the government to show a compelling state interest for its action." Davis v. Union Pacific Railroad Co. (Mont. 1997), 937 P.2d 27, 31, 54 St.Rep. 328, 331.

If the right in question has its origin in the Montana Constitution, but is not found in the Declaration of Rights, we employ a middle-tier scrutiny. Butte Community Union v. Lewis (1986), 219 Mont. 426, 434, 712 P.2d 1309, 1313. Middle-tier scrutiny requires the State to demonstrate that its classification is reasonable and that its interest in the classification is greater than that of the individual's interest in the right infringed. Lewis, 712 P.2d at 1314.

If the right in question is not fundamental and does not warrant middle-tier scrutiny, we review under a rational basis test. This test requires the government to show that the objective of the statute is legitimate and bears a rational relationship to the classification used by the legislature. Cottrill v. Cottrill Sodding Service (1987), 229 Mont. 40, 744 P.2d 895.

In addressing an equal protection challenge, we first identify the classes involved and determine whether they are similarly situated. The two classes involved in the present appeals are: 1) juveniles who are sentenced as adults under the EJPA; and 2) adults who are sentenced for committing the same offense as the juveniles. Since both classes are composed of persons who have committed the same act and who are sentenced "as adults," the classes are similarly situated for equal protection purposes.

We next determine whether a suspect classification is involved. A suspect class is one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." San Antonio Independent School Dist. v. Rodriguez (1973), 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16, 40. A classification between juvenile and adult offenders is a distinction based upon age. We have followed the United States Supreme Court in holding that a sentencing distinction based upon age is not a suspect classification requiring strict scrutiny. Matter of Wood (1989), 236 Mont. 118, 125, 768 P.2d 1370, 1375.

We then define the nature of the individual interest affected; is it a fundamental right triggering a strict scrutiny analysis? The youths argue that imposition of an adult sentence in addition to a juvenile disposition is an infringement upon their physical liberty and that physical liberty is a fundamental right. This question was answered in Matter of C.H. (1984), 210 Mont. 184, 683 P.2d 931. C.H. contended that placing a truant status offender in an institution for a 45-day predispositional evaluation was an infringement upon the fundamental right of physical liberty, a right which must be protected absent a compelling state interest. Matter of C.H., 683 P.2d at 938. She also contended that § 41-5-103(12), MCA, is unconstitutional in that it authorizes the youth court to reclassify a youth in need of supervision who has violated a court order as a delinquent youth. Matter of C.H., 683

13

P.2d at 938. She contended that this classification violated equal protection guarantees by allowing the court to treat youths in the same class, i.e., youthful contemnors, differently.

While physical liberty is not specifically guaranteed under either the United States Constitution or the Montana Constitution, we noted in Matter of C.H., 683 P.2d at 940, that the concept of "liberty" is very much a part of our state constitution. The preamble to the Montana Constitution states in part: "We the people of Montana . . . desiring . . . to secure the blessings of liberty . . . do ordain and establish this constitution." Further, Article II, Section 3 states in part: "All persons are born free and have certain inalienable rights. They include . . . the rights of . . . enjoying and defending their lives and liberties . . . ." Article II, Section 17, the due process clause, states: "No person shall be deprived of life, liberty, or property without due process of law."

In Matter of C.H., 683 P.2d at 940, we concluded: "Reading the preamble and these sections of our constitution together, we hold that under the Montana Constitution physical liberty is a fundamental right, without which other constitutionally guaranteed rights would have little meaning." We then analyzed the interplay between the guarantee of equal protection and Article II, Section 15's guarantee to minors of all the fundamental rights of Article II unless specifically precluded by laws which enhance the protection of such persons. We held that "a juvenile's right to physical liberty must be balanced against her right to be supervised, cared for and rehabilitated." Matter of C.H., 683 P.2d at 941.

14

We determined that two compelling state interests justified classifying a youth as a delinquent youth or a youth in need of supervision, depending upon the circumstances. The two compelling state purposes were: 1) to rehabilitate youthful offenders by providing for their care, protection and wholesome mental development before they become adult criminals; and 2) to substitute a program of supervision, care and rehabilitation and remove the element of retribution from the punishment of a youth who has violated the law. Matter of C.H., 683 P.2d at 941. "The youth court's statutory authority to classify contempt of court, depending upon the circumstances of the case, permits the court to fashion an appropriate, individual rehabilitation plan for each youthful contemn[o]r." Matter of C.H., 683 P.2d at 941.

In the present appeals, the EJPA's imposition of an adult sentence in addition to a juvenile disposition infringes on the juvenile's physical liberty, which is a fundamental right. As in Matter of C.H., 683 P.2d at 941, we must therefore apply a strict scrutiny analysis and determine whether there is a compelling state interest sufficient to justify such an infringement and whether such an infringement is consistent with the mandates of Article II, Section 15 of the Montana Constitution.

Article II, Section 15 provides:

Rights of persons not adults. The rights of persons under 18 years of age shall include, but not be limited to, all the fundamental rights of this Article unless specifically precluded by laws which enhance the protections of such persons.

15

This section must be read in conjunction with the guarantee of equal protection found in Article II, Section 4. The report of the Bill of Rights Committee of the Constitutional Convention indicates that one of the primary purposes of Article II, Section 15 was to remedy the fact that minors had not been accorded full recognition under the equal protection clause of the United States Constitution. The Bill of Rights Committee's Comments are as follows:

> The committee took this action in recognition of the fact that young people have not been held to possess basic civil rights. Although it has been held that they are "persons" under the due process clause of the Fourteenth Amendment, the Supreme Court has not ruled in their favor under the equal protection clause of that same amendment. What this means is that persons under the age of majority have been accorded certain specific rights which are felt to be a part of due process. However, the broad outline of the kinds of rights young people possess does not yet exist. This is the crux of the committee proposal: to recognize that persons under the age of majority have the same protections from governmental and majoritarian abuses as do adults. In such cases where the protection of the special status of minors demands it, exceptions can be made on clear showing that such protection is being enhanced.

Montana Constitutional Convention, Vol. II at 635-36.

Clearly under Article II, Section 15, minors are afforded full recognition under the equal protection clause and enjoy all the fundamental rights of an adult under Article II. Furthermore, if the legislature seeks to carve exceptions to this guarantee, it must not only show a compelling state interest but must also show that the exception is designed to enhance the rights of minors.

In Matter of C.H., 683 P.2d at 941, we held that the state had a compelling interest in removing the element of retribution and instead rehabilitating youths before they became

16

adult offenders. At the time Matter of C.H. was decided, the stated purpose of the Youth Court Act was "to remove from youth committing violations of the law the element of retribution and to substitute therefor a program of supervision, care, rehabilitation, and, in appropriate cases, restitution as ordered by the youth court." Section 41-5-102(2), MCA (1983). However, the purposes of the Youth Court Act have since been considerably broadened. As of the 1995 amendments, the Declaration of Purpose now states the following goals:

> [T]o prevent and reduce youth delinquency through an immediate, consistent, enforceable, and avoidable consequences of youths' actions and to establish a program of supervision, care, rehabilitation, *detention, competency development, community protection*, and, in appropriate cases, restitution as ordered by the youth court[.]

Section 41-5-102(2), MCA (1995) (emphasis added).

As compared to the pre-1995 Declaration of Purpose, the Act now espouses much more preventative, if not punitive, goals; that is, the Act now seeks to prevent delinquency through imposition of enforceable and immediate consequences and to establish programs of detention and community protection. The State asserts that the EJPA was designed by the legislature to address the rising tide of juvenile criminal conduct in Montana and dispel the notion held by some juveniles that their criminal conduct holds no consequences for them. The EJPA, as noted by the State, gives the courts "a bigger stick to help keep kids in line--to let them know their crimes are serious and this is their last chance to cooperate." Obviously, it is no longer accurate to reason, as we did in Matter of C.H., 683 P.2d at 941, that Youth

17

Court Act infringements upon a juvenile's physical liberty are legitimate means of enhancing their protection. Indeed, in requiring the court to impose an adult sentence in addition to the juvenile disposition, the EJPA goes beyond mere rehabilitation and injects the specter of retribution. Our holding in Matter of C.H. is thus distinguishable on that basis.

All juveniles subject to the EJPA are at risk of serving an adult sentence in addition to their juvenile disposition. Thus, the EJPA, on its face, violates the equal protection clause of Article II, Section 10 by treating EJPA offenders more harshly than their adult counterparts. The EJPA also violates Article II, Section 15 by reducing, rather than enhancing, a juvenile's rights as compared to an adult's. The State, relying solely on its contention that age is not a suspect classification, does not address the fundamental right analysis and has not suggested any compelling state interest to justify the EJPA's infringement on the fundamental right of physical liberty. While the State has a clear interest in deterring serious juvenile crime and while it can, within the limits of equal protection, further this interest by increasing the sanctions imposed upon juveniles, it has no compelling state interest in treating them as adults and restricting their physical liberty beyond the restrictions which are imposed upon an adult for the same offense.

As an example, one of the appeals before us, Matter of J.L.C., Cause No. 96-220, Hill County, involves a 17-year-old youth who pled guilty to one count of negligent homicide, a violation of § 45-5-104, MCA. Pursuant to the EJPA, J.L.C. received a juvenile disposition committing him to formal probation until age 21 plus an adult sentence of 5 years with the

18

Department of Corrections, suspended on the condition that he comply with the probation until age 21. Thus, while the "adult" portion of his sentence is only 5 years, the total sentence with both juvenile and adult aspects combined could equal 9 years, nearly twice as long as the 5-year adult sentence under similar circumstances. Clearly, although the law purports to treat J.L.C. as an "adult," he is treated differently than an adult and in such a manner that his rights are lessened rather than enhanced, as mandated by Article II, Section 15. Thus, the EJPA, both on its face and as applied to J.L.C., violates equal protection under Article II, Section 4 and a minor's rights to enhanced protection under Article II, Section 15 of the Montana Constitution.

In addition to Matter of C.H., 683 P.2d at 931, discussed above, we have twice addressed equal protection challenges to the different treatment of offenders based upon age. As the following analysis indicates, we find both of these decisions distinguishable.

A. Our Decision in Matter of Wood:

In Matter of Wood (1989), 236 Mont. 118, 768 P.2d 1370, we addressed an equal protection challenge by a 16-year-old youth to the process whereby jurisdiction over his homicide case was mandatorily transferred from youth court to district court. The Youth Court Act, § 41-5-206(1)(a)(i), MCA, provided that a youth aged 12 years or older who had committed deliberate homicide or mitigated deliberate homicide *may* be transferred, after a hearing, to district court. Wood contended that, as a 16-year-old, he was entitled to the same due process (i.e., a hearing) as a younger person and that § 41-5-206(3), MCA, denied equal

19

protection when it provided that youths 16 years or older who have allegedly committed deliberate homicide *must* be transferred to district court, without any requirement of a hearing. Matter of Wood, 768 P.2d at 1372. We held that procedural due process is not a fundamental right nor is age a suspect class requiring strict scrutiny. Matter of Wood, 768 P.2d at 1375. We applied the rational basis test and concluded that treatment as a juvenile is not an inherent right, that the legislature may restrict or qualify that right, and that the legislative classification based upon age and gravity of the offense was rationally related to the legitimate state objective of deterring homicides committed by teenagers and protecting society from these violent offenders. Matter of Wood, 768 P.2d at 1376.

Matter of Wood, 768 P.2d at 1370, is distinguishable from the case *sub judice.* Matter of Wood involves the right to procedural due process, which we held is not a fundamental right. In this case, the appellants are challenging the actual loss of physical liberty, in addition to challenging the process by which sentence is imposed. As we stated earlier, physical liberty is a fundamental right requiring strict scrutiny. Also, Matter of Wood, 768 P.2d at 1374-76, involved the transfer statute, § 41-5-206, MCA, and an alleged right to be treated as a juvenile. The present appeals involve the EJPA, which while purporting to treat juveniles as adults in fact treats them more harshly than adults under similar circumstances. Our decision in Matter of Wood is thus not controlling of the issues presented herein.

20

B. Our Decision in Matter of C.S.:

We addressed an equal protection challenge to the disparate application of sentencing laws to minors as compared to adults in Matter of C.S. (1984), 210 Mont. 144, 687 P.2d 57. At the age of 15, C.S. was adjudged a delinquent youth for having committed the offense of violation of privacy in communication, a misdemeanor as provided in § 45-8-213, MCA. Matter of C.S., 687 P.2d at 58. At the dispositional hearing, C.S. was committed to the Department of Institutions until age 21, unless the Department deemed an earlier release appropriate. Thus, the maximum amount of time C.S. could have spent in the custody of the Department was six years. Matter of C.S., 687 P.2d at 58. This was considerably longer than the six-month maximum to which an adult could be sentenced for committing the same offense. For that reason, C.S. argued that her term of commitment violated the equal protection clause. Matter of C.S., 687 P.2d at 58. We concluded that adults and minors are not similarly situated with respect to Montana's sentencing laws for three reasons. Matter of C.S., 687 P.2d at 59.

The three reasons propounded were: 1) a juvenile commitment is different from a criminal conviction because, given the stated policy of the Youth Court Act in 1984, a juvenile commitment is strictly for rehabilitation, not retribution; 2) in contrast to an adult, the liberty interests of a minor are subject to reasonable regulation by the State under the doctrine of *parens patriae*; and 3) other jurisdictions have employed the *parens patriae* doctrine under similar youth court acts. Matter of C.S., 687 P.2d at 59.

21

Our decision in Matter of C.S., 687 P.2d at 57, predates the adoption of the EJPA. After review of the EJPA and the revised Youth Court Act, we conclude that the three distinctions drawn in Matter of C.S. between minors and adults do not apply in the context of these acts. As stated above in our discussion of Matter of C.H., given the new breadth of purpose of the Youth Court Act and the adult sentencing provisions of the EJPA, it is no longer accurate to state, as we did in Matter of C.S., 687 P.2d at 59, that a Youth Court disposition is "strictly for rehabilitation, not retribution." Our holding in Matter of C.S. is thus distinguishable on that basis.

Furthermore, where the offender is sanctioned with an "adult" sentence, as under the EJPA, we cannot rely on the doctrine of *parens patriae* to distinguish between the treatment of juveniles and adults. *Parens patriae* traditionally refers to the role of the State as sovereign or guardian of persons who are under a legal disability, such as juveniles--"the principle that the state must care for those who cannot take care of themselves, such as minors who lack proper care and custody from their parents." BLACK'S LAW DICTIONARY 1114 (6th ed. 1990). Where, as under the EJPA, the offender is no longer sentenced solely as a juvenile, but as an adult as well, the doctrine's paternalistic rationale no longer applies.

Finally, the doctrine of *parens patriae* must be applied consistently with Article II, Section 15 of the Montana Constitution which provides: "The rights of persons under 18 years of age shall include, but not be limited to, all the fundamental rights of this Article unless specifically precluded by laws which *enhance* the protection of such persons."

22

(Emphasis added.) In light of this clear constitutional guarantee, a juvenile enjoys all the rights and privileges of an adult unless the law at issue affords *more*, not less, protection to the juvenile. Our decision in Matter of C.S., 687 P.2d at 57, did not address the provisions of Article II, Section 15 and does not conflict with our conclusion that infringement of an EJPA offender's liberty for a longer period of time than an adult under like circumstances does not *enhance* the juvenile's rights.

## CONCLUSION

Under the framework of the EJPA, a juvenile receives a juvenile disposition plus an adult sentence. If the juvenile violates the terms of the juvenile disposition, it is possible for the youth to serve a longer term of detention or imprisonment than an adult who has committed the same offense. The State has not shown a compelling interest to be advanced by this unequal treatment of similarly situated persons, nor has it shown that the EJPA provides juveniles with increased, rather than decreased, protection under the law. Therefore, we hold that the EJPA violates Article II, Section 4 (equal protection) and Article II, Section 15 (rights of minors).

Although the Youth Court Act, including the EJPA, is subject to a severability clause, our holding that the EJPA violates Article II, Sections 4 and 15 of the Montana Constitution goes to the heart of the EJPA. That is, the EJPA's imposition of an adult sentence in addition to the juvenile disposition is necessary to the integrity of the EJPA and was the inducement to its enactment. Accordingly, the remaining provisions of the EJPA cannot be saved

23

*through application of the severability clause.*  See Montana Auto. Ass'n v. Greely (1981), 193 Mont. 378, 399, 632 P.2d 300, 311.

Although our equal protection analysis differs considerably from that of the Thirteenth Judicial District Court in Matter of L.D. and Matter of J.A.T., that court nonetheless reached the right result.  We affirm district court decisions which are correct regardless of the court's reasoning in reaching the decision.  Clark v. Eagle Systems, Inc. (1996), 279 Mont. 279, 927 P.2d 995.   Accordingly, we affirm the District Court's decision that the EJPA is unconstitutional.  The Hill County Matter of J.L.C., the Gallatin County Matter of S.L.M. and the Gallatin County Matter of S.T. are remanded to those District Courts for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

24

Justice Terry N. Trieweiler specially concurring.

I concur with the majority's conclusion that the Extended Jurisdiction Prosecution Act, found at §§ 41-5-1101 to -1105, MCA (1995), is unconstitutional. However, I conclude that it violates the prohibition against double jeopardy found at Article II, Section 25, of the Montana Constitution, by imposing multiple punishments for the same offense. Therefore, I would not reach the issue of whether it violates the youths' constitutional right to equal protection pursuant to Article II, Sections 4 and 15, of the Montana Constitution.

Section 41-5-1104, MCA (1995), clearly provides for multiple punishments for the same offense. That section specifies that:

> If a youth in an extended jurisdiction prosecution pleads guilty to or is found guilty of an offense described in 41-5-1102(1)(b), the court shall:
> (a) Impose one or more juvenile dispositions under 41-5-523; and
> (b) Impose an adult criminal sentence, the execution of which must be stayed on the condition that the youth not violate the provisions of the disposition order and not commit a new offense. If the youth violates the conditions of the stay or commits a new offense, the adult criminal sentence must be executed as provided in 41-5-1105.

(Emphasis added.)

Section 41-5-1104(a), MCA (1995), provides for imposition of those punishments established by the Youth Court Act. Subsection (b) provides for the concurrent imposition of an adult sentence which, although stayed, can be enforced at a later date.

The State contends that pursuant to our decision in *State v. Zabawa* (1996), 279 Mont. 307, 928 P.2d 151, and the United States Supreme Court's decision in *Missouri v. Hunter* (1983), 459 U.S. 359, 103 S. Ct. 673, 74 L. Ed. 2d 535, cumulative punishments for a single

25

offense do not violate the double jeopardy clauses of either the Fifth Amendment to the United States Constitution, or Article II, Section 25, of the Montana Constitution. While that may be the interpretation attached to the Federal Constitution by the United States Supreme Court, I would not follow that reasoning when applying our own constitutional prohibition against double jeopardy for the reasons stated in Justice Leaphart's dissent to the *Zabawa* decision.

As this Court noted in *State v. Johnson* (1986), 221 Mont. 503, 513, 719 P.2d 1248, 1254, "states may interpret their own constitutions to afford greater protections than the Supreme Court of the United States has recognized in its interpretations of the federal counterparts to state constitutions." Furthermore, as stated by Justice Leaphart in his dissent to this Court's *Zabawa* decision:

> I would decline to adopt the United States Supreme Court's interpretation of the "multiple punishment" element of the Double Jeopardy Clause in *Missouri v. Hunter* (1983), 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535. Instead, I interpret the double jeopardy clause of Article II, Section 25 of the Montana Constitution, as providing substantive protection against multiple punishments irrespective of any legislative enactments.
>
> . . . .
>
> . . . [W]e do a grave disservice to the framers of the Montana Constitution when we hold that a constitutional provision means nothing more than what the legislative branch intends it to mean. Constitutional guarantees are not mere vessels to be left empty or filled at the whim of the legislative branch. Rather, they have intrinsic meaning which is independent of any legislative intent. Contrary to this Court's characterization of the issue, the question is not whether Article II, Section 25 of the Montana Constitution provides "greater protection" from double punishment than does the Fifth Amendment, the question is whether it provides *any* protection independently of what the legislature chooses to provide.

26

. . . .

    . . . The double jeopardy clause in Article II, Section 25, limits the power of all branches of government, *including the legislature.* Whether the legislature intends multiple punishments or not, as a matter of state constitutional law, such cumulative punishment is proscribed under the double jeopardy clause.

*Zabawa*, 279 Mont. at 323-26, 928 P.2d at 161-63 (Leaphart, J., dissenting).

We have previously recognized that the Fifth Amendment to the United States Constitution protects against multiple punishments for the same offense, and that Montana's corresponding right provides the same protection. *See State v. Nelson* (1996), 275 Mont. 86, 90, 910 P.2d 247, 250. The Extended Jurisdiction Prosecution Act clearly provides multiple punishments for the same offense. It defies all principles of a constitutional system of government to suggest that the Legislature defines it own constitutional parameters. Therefore, based on the reasoning in the dissent to *Zabawa*, I would conclude that the Extended Jurisdiction Prosecution Act violates the prohibition against double jeopardy in the Montana Constitution and is unenforceable.

For these reasons, I concur with the result of the majority opinion, but express no view regarding the reasoning for the majority opinion.

                                              _____

                                                 Justice