No. 98-351

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 126

JERRY HENRY,

Petitioner and Appellant,

v.

STATE COMPENSATION INSURANCE FUND,

Respondent and Insurer for,

APPLIANCE CARE, INC.,

Respondent and Employer and Insured.

APPEAL FROM: Workers' Compensation Court

State of Montana

No

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Steve M. Fletcher (argued), Bulman Law Associates, Missoula, Montana

For Respondent:

Carrie Garber (argued), State Compensation Insurance Fund, Helena, Montana

For Amicus Curiae:

Patricia O'Brien Cotter (argued), Montana Trial Lawyers Association,

Great Falls, Montana

Heard: February 18, 1999

Submitted: February 19, 1999

Decided: June 3, 1999

Filed:

No

_____

Clerk


Justice William E. Hunt, Sr. delivered the Opinion of the Court.


**¶1. The Workers' Compensation Court held that the Montana Legislature's failure to provide vocational rehabilitation benefits to diseased workers under the Occupational Disease Act (ODA), like it provided to injured workers under the Workers' Compensation Act (WCA), does not violate the equal protection clause of the Montana Constitution. Jerry Henry appeals. We reverse and remand.**

**¶2. The dispositive issue presented on appeal is whether the Occupational Disease Act violates the equal protection clause of the Montana Constitution because it fails to provide vocational rehabilitation benefits to diseased workers.**

## FACTUAL AND PROCEDURAL BACKGROUND

**¶3. The parties stipulated to the following facts:**

**¶4. 1. On April 1, 1995, Henry was injured while employed with Appliance Care, Inc., in Lake County, Montana. Henry suffered a herniated disc in his back when he was moving and lifting appliances. The claim was treated and accepted as an occupational disease.**

**¶5. 2. The State Fund accepted liability for the claim as an occupational disease and medical and compensation benefits were paid. Henry reached maximum medical improvement and the parties settled the case pursuant to § 39-72-405, MCA.**

**¶6. 3. Henry requested rehabilitation benefits after reaching maximum medical**

improvement, but the State Fund denied all liability for rehabilitation benefits because the claim was accepted under the Occupational Disease Act.

¶7. 4. Henry was unable to return to his time of injury job because of his herniated disc.

¶8. 5. Henry is married and has three children, ages 9, 8, and 3 [at that time].

¶9. Although the parties settled the claim, Henry reserved the right to challenge the State Fund's denial of his request for rehabilitation benefits. Henry contended that the ODA's failure to provide rehabilitation benefits violated his right to equal protection of the laws. The Workers' Compensation Court disagreed. The court cited Eastman v. Atlantic Richfield Co. (1989), 237 Mont. 332, 777 P.2d 862 and held that the failure to provide rehabilitation benefits to workers suffering from occupational diseases does not violate the equal protection clause of the Montana Constitution. Henry then filed this appeal.

## STANDARD OF REVIEW

¶10. Resolution of this issue involves a question of constitutional law. The standard for reviewing conclusions of law is whether they are correct. State v. Butler, 1999 MT 70, ¶ 7, __ P.2d __, ¶ 7, 56 St. Rep. 291, ¶ 7 (citation omitted).

¶11. All legislative enactments are presumed constitutional. The party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt. Butler, ¶ 8.

## OVERVIEW OF THE WORKERS' COMPENSATION ACT

## AND THE OCCUPATIONAL DISEASE ACT

¶12. We begin our analysis with a brief historical overview of the relevant provisions of the Workers' Compensation Act and the Occupational Disease Act. Historically, the workers' compensation system was an outgrowth of tort law. It was premised on a compromise whereby workers gave up their right to sue employers in tort for work-related injuries in exchange for a guaranteed compensation system. The injured

worker gave up his right to receive full compensation for his injury in exchange for receiving a speedy and certain award; compensation did not depend upon the fault of the employer, nor was it denied based upon the fault of the employee. Based upon the legal environment existing at the time that workers' compensation laws were first enacted, this bargain was perceived as fair. <u>See</u> Haas, Theodore F., *On Reintegrating Workers' Compensation and Employers' Liability*, 21 Ga.L.Rev. 843, 846-47, 862-868 (1987).

¶13. Because of its historical underpinnings, the workers' compensation system was designed to compensate only victims of industrial accidents, and not workers suffering from occupational diseases. As was explained in 3 Larson, Workers' Compensation Law, § 41.20 (1998):

To the extent that compensation acts were thought of as substituting nonfault liability for the kind of injuries that were potential subjects of fault liability, there was thought to be no place for occupational diseases, which (in the sense of a disease due to the "normal" conditions of the industry as distinguished from the negligence of the employer) had consistently been held incapable of supporting a common-law action.

¶14. However, as the incidence of diseases such as silicosis and asbestosis increased, the law was expanded to provide benefits to workers suffering from such diseases. <u>See</u> Kutchins, Albert, *The Most Exclusive Remedy Is No Remedy at All: Workers' Compensation Coverage for Occupational Diseases*, 32 Lab.LJ. 212, 212 (1981). In 1959, the Montana Legislature created a statutory remedy for work-related diseases when it enacted the ODA, now codified at §§ 39-72-101 to 714, MCA.

¶15. Consistent with the historical circumstances that gave rise to the two Acts, coverage by each Act was thus dependent upon the worker's medical condition. What constituted an "injury" under the WCA was different than what constituted an "occupational disease" under the ODA. When the WCA was first enacted, "injury" was defined as follows:

(k) "Injury" means and shall include death resulting from injury.

. . . .

(q) "Injury" or "injured" refers only to an injury resulting from some fortuitous event, as distinguished from the contraction of disease.

1915 Mont. Law Ch. 96, Section 6.

**¶16. In 1961, two years after the ODA was passed, the WCA defined "injury" to mean:**

a tangible happening of a traumatic nature from an unexpected cause, resulting in either external or internal physical harm, and such physical condition as a result therefrom and excluding disease not traceable to injury.

1961 Mont. Law Ch. 162, Section 6. The legislature amended the definition a few more times prior to 1987, most notably in 1973, when it included within the definition of "injury" cardiovascular, pulmonary, or respiratory diseases contracted by firefighters during employment due to over-exertion in times of stress or danger or by cumulative exposure over four years to toxic gases. 1973 Mont. Law Ch. 488, Section 1.

**¶17. Similarly, consistent with its historical purposes, when the ODA was enacted, it defined "occupational disease" as silicosis or poisoning by a variety of enumerated compounds. 1959 Mont. Laws Ch. 155, Section 4. In 1979, the legislature redefined it to mean "all diseases arising out of or contracted from and in the course of employment." 1979 Mont. Law Ch. 397, Section 85 (11). For purposes relevant to this appeal, however, neither the definition of "injury" nor the definition of "occupational disease" was substantially changed until 1987.**

**¶18. In 1987, the Montana Legislature overhauled the workers' compensation system. In so doing, it significantly redefined what it means to be injured under the WCA and what it means to be diseased under the ODA. Rather than focusing on the nature of the medical condition as it historically did, the legislature instead focused in part on the number of work shifts over which a worker incurred an affliction.**

**¶19. Specifically, the legislature amended the WCA to define "injury" as follows:**

(1) "Injury" or "injured" means:

(a) internal or external physical harm to the body;

(b) damage to prosthetic devices or appliances, except for damage to eyeglasses, contact lenses, dentures, or hearing aids; or

(c) death.

(2) An injury is caused by an accident. An accident is:

(a) an unexpected traumatic incident or unusual strain;

(b) identifiable by time and place of occurrence;

(c) identifiable by a member or part of the body affected; and

(d) caused by a specific event on a single day or during a single work shift.

1987 Mont. Law Ch. 464, Section 3, codified at § 39-71-119, MCA (1993)(emphasis added).

**¶20. Similarly, the legislature amended the ODA to define "occupational disease" as follows:**

"Occupational disease" means harm, damage, or death as set forth in 39-71-119(1) [defining "injury" or "injured" under the Workers' Compensation Act] arising out of or contracted in the course and scope of employment and caused by events occurring on more than a single day or work shift. The term does not include a physical or mental condition arising from emotional or mental stress or from a nonphysical stimulus or activity.

1987 Mont. Law Ch. 464, Section 64, codified at § 39-72-102(10), MCA (emphasis added).

**¶21. Thus, according to the 1987 definitions, a worker who obtains an affliction such**

as a herniated disc on one work shift, is considered "injured" and is thus covered by the WCA. At the same time, another worker who obtains that exact same affliction, a herniated disc, over the course of two work shifts, is considered "diseased" and is covered by the ODA. Moreover, many conditions that constituted "injuries" prior to 1987 are now considered "diseases" under the new definitions. For example, a worker such as Henry has an "occupational disease" under the ODA if he obtains a herniated disc over two work shifts, but would have had an "injury" under the WCA prior to 1987.

¶22. When the legislature overhauled the system in 1987, it also declared it to be the public policy of the State of Montana to return both injured and diseased workers to work as soon as possible:

**Declaration of public policy.** For the purposes of interpreting and applying Title 39, Chapters 71 and 72 [Workers' Compensation Act and Occupational Disease Act, respectively], the following is the public policy of this state:

. . . .

(2) A worker's removal from the work force due to a work-related injury or disease has a negative impact on the worker, the worker's family, the employer, and the general public. Therefore, it is an objective of the workers' compensation system to return a worker to work as soon as possible after the worker has suffered a work-related injury or disease.

1987 Mont. Law Ch. 464, Section 1, codified at § 39-71-105, MCA (emphasis added).

¶23. To implement the goal of early return to work, the legislature enacted statutes providing for rehabilitation services. A "rehabilitation plan" is defined as:

a written individualized plan that assists a disabled worker in acquiring skills or aptitudes to return to work through job placement, on-the-job training, education, training, or specialized job modification and that reasonably reduces the worker's actual wage loss.

Section 39-71-1011(4), MCA. "Rehabilitation services" is defined as:

a program of evaluation, planning, and implementation of a rehabilitation plan to assist a disabled worker to return to work.

Section 39-71-1011(6), MCA. Section 39-71-1006, MCA, sets forth the criteria for a worker's eligibility for rehabilitation benefits.

¶24. However, these vocational rehabilitation provisions are set forth in Chapter 71 (the WCA), rather than in Chapter 72 (the ODA). After analyzing this legislative scheme, this Court has held that rehabilitation benefits are not statutorily available to workers proceeding under the ODA. **Loss v. Lumbermens Mut. Cas. Co. (1997), 282 Mont. 80, 936 P.2d 313.** This case now presents a constitutional challenge to that legislative scheme.

## DISCUSSION

¶25. Does the Occupational Disease Act (ODA) violate the equal protection clause of the Montana Constitution to the extent that it fails to provide vocational rehabilitation benefits to diseased workers?

¶26. Article II, Section 4, of the Montana Constitution provides that "[n]o person shall be denied the equal protection of the laws." Henry contends that the failure of the law to extend rehabilitation benefits to workers proceeding under the ODA, like it does to workers proceeding under the WCA, violates his rights to equal protection.

*A. Similarly situated classes.*

¶27. When addressing the equal protection challenge, this Court must first identify the classes involved and determine whether they are similarly situated. **Matter of S.L. M. (1997), 287 Mont. 23, 32, 951 P.2d 1365, 1371.** The two classes involved in this present appeal are (1) workers who suffered a work-related injury on one work shift; and (2) workers who suffered a work-related injury on more than one work shift. As it applies to Henry's case in particular, the two classes are (1) workers who incur a herniated disc during one work shift; and (2) workers who incur a herniated disc on two or more work shifts.

¶28. The State Fund argues that the two classes are not similarly situated because

each class is required to seek benefits under a separate legislative enactment, either the WCA or the ODA. The State Fund misses the point. Regardless of the number of days or the mechanism by which a worker incurs an affliction, the fact remains that both classes of individuals have suffered work-related injuries, are unable to perform their former jobs, and need rehabilitation benefits to return to work. Both workers have as their sole source of redress the WCA or the ODA. As it applies to Henry in particular, both classes involve workers who have suffered the exact same work-related injury, herniated discs, and both need rehabilitation benefits to return to work as soon as possible. We conclude that the classes are similarly situated for equal protection purposes.

*B. Level of scrutiny.*

¶29. The next step in addressing an equal protection challenge is to determine the appropriate level of scrutiny to apply to the challenged legislation. In so doing, we must determine whether a suspect classification is involved or whether the nature of the individual interest involves a fundamental right, either of which would trigger a strict scrutiny analysis. Matter of S.L.M., 287 Mont. at 33, 951 P.2d at 1371. This Court has previously held that the workers' compensation statutes neither infringe upon the rights of a suspect class nor involve fundamental rights which would trigger a strict scrutiny analysis. Heisler v. Hines Motor Co. (1997), 282 Mont. 270, 279, 937 P.2d 45, 50 (citing Stratemeyer v. Lincoln County (1993), 259 Mont. 147, 151, 855 P.2d 506, 509; Cottrill v. Cottrill Sodding Service (1987), 229 Mont. 40, 42, 744 P.2d 895, 897). This Court has held that the test to be applied when analyzing workers' compensation statutes is the rational basis test. Zempel v. Uninsured Employers' Fund (1997), 282 Mont. 424, 430, 938 P.2d 658, 662; Heisler, 282 Mont. at 279, 937 P.2d at 50 (citing Stratemeyer, 259 Mont. at 151, 855 P.2d at 509).

¶30. Notwithstanding this Court's previous declarations, Henry cites Butte Community Union v. Lewis (1986), 219 Mont. 426, 712 P.2d 1309 and contends that this Court should apply a middle-tier scrutiny. This Court employs the middle-tier scrutiny when the right in question has its origins in the Montana Constitution, but is not found in the Declaration of Rights. Lewis, 219 Mont. at 434, 712 P.2d at 1313. We do so because "[w]here constitutionally significant interests are implicated by governmental classification, arbitrary lines should be condemned." Lewis, 219 Mont. at 434, 712 P.2d at 1314. Middle-tier scrutiny requires the State to demonstrate (1) that its classification is reasonable; and (2) that its interest in the classification is

more important than the people's interest in the right infringed upon. <u>Lewis</u>, 219 Mont. at 434, 712 P.2d at 1314.

¶31. Henry contends that the failure of the ODA to provide rehabilitation benefits affects his fundamental right to pursue life's basic necessities and to acquire, possess, and protect property, under Article II, Section 3 of the Montana Constitution. However, he provides no legal analysis in support of his position, nor does he provide an argument as to why this Court's previous decisions applying the rational basis test were incorrect and should be overruled.

¶32. In the past, this Court has declined to address issues where the parties have failed to develop legal analysis to support their position. Johansen v. State Dept. of Natural Resources, 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24 (citing Rule 23, M.R.App.P.; State v. Carter (1997), 285 Mont. 449, 461, 948 P.2d 1173, 1180). Given the importance of this issue, the fact that this Court has previously held that the rational basis test must be applied when addressing constitutional challenges to the workers' compensation statutes, and Henry's failure to articulate a legal basis for overruling this precedent, we decline to employ the middle-tier scrutiny to this case at this time. We conclude that Henry's constitutional challenge must be evaluated under the rational basis test.

*C. The rational basis test.*

¶33. The rational basis test requires the government to show (1) that the statute's objective was legitimate, and (2) that the statute's objective bears a rational relationship to the classification used by the legislature. Stated another way, the statute must bear a rational relationship to a legitimate governmental interest. <u>Heisler</u>, 282 Mont. at 279, 937 P.2d at 50; <u>Matter of S.L.M.</u>, 287 Mont. at 32, 951 P.2d at 1371.

¶34. In this case, the legislature specified its objective or governmental interest in 1987 when it made this sweeping declaration of public policy:

**Declaration of public policy.** For the purposes of interpreting and applying Title 39, chapters 71 and 72 [the WCA and the ODA], <u>the following is the public policy of this state:</u>

(2) A worker's removal from the work force due to a work-related injury or disease has a negative impact on the worker, the worker's family, the employer, and the general public. Therefore, <u>it is an objective of the workers' compensation system to return a worker to work as soon as possible after the worker has suffered a work-related injury or disease.</u>

Section 39-71-105, MCA (emphasis added).

**¶35. Because the legislature clearly stated its policy in unambiguous terms, there is no need to search the legislative history to ascertain the legislature's interest in its statutory scheme. Both Henry and *amicus curiae* agree that the early return to work of an employee following an injury or disease is a legitimate objective. We similarly conclude that returning a worker to work as soon as possible is a legitimate governmental interest.**

**¶36. We next analyze whether that objective bears a rational relationship to the classification used by the legislature. As this Court has stated:**

A classification that is patently arbitrary and bears no rational relationship to a legitimate governmental interest offends equal protection of the laws. As we have previously held, equal protection of the laws requires that all persons be treated alike under like circumstances.

Davis v. Union Pacific R. Co. (1997), 282 Mont. 233, 242-43, 937 P.2d 27, 32 (citation

omitted).

**¶37. This Court has previously struck as unconstitutional provisions within the workers' compensation statutes that create arbitrary classes. <u>See</u>, e.g., <u>Heisler</u>, 282**

Mont. 270, 937 P.2d 45 (holding workers' compensation statute which precluded claimants covered by certain insurance plans the right to change physician without prior authorization unconstitutional); Cottrill v. Cottrill Sodding Service (1987), 229 Mont. 40, 744 P.2d 895 (holding workers' compensation statute requiring family members to elect special coverage unconstitutional).

¶38. In this case, the issue is whether the elimination of workers suffering occupational diseases from the classification of injured workers having access to rehabilitation benefits bears a rational relationship to the legitimate governmental objective of returning workers to work as soon as possible. The inescapable answer is that it does not.

¶39. Rehabilitation services are the only mechanism provided to implement the legislature's explicit objective of returning workers to work, and yet those services are arbitrarily implemented for one class of employees and denied to the other. How does differentiating a worker who obtains a herniated disc over one shift from a worker who obtains a herniated disc over two shifts promote the policy of returning all such injured workers to work as soon as possible? What rational basis can there be for providing rehabilitation benefits to workers based simply on the number of work shifts over which a worker is injured? We can find none.

¶40. Any argument that economic reasons justify treating the two classes differently must be rejected. This Court has previously held that cost control alone is no justification. As we stated:

Cost-control alone cannot justify disparate treatment which violates an individual's right to equal protection of the law. Discrimination, that is, offering services to some while excluding others for any arbitrary reason, will *always* result in lower costs. We do not, however, allow discrimination merely for the sake of fiscal health.

Heisler, 282 Mont. at 283, 937 P.2d at 52.

¶41. In support of its position that there is a rational basis for such distinction, the State Fund argues that there is a historical basis for treating the two classes of workers differently, and it points to Eastman. In that case, Eastman challenged the legislature's classification of diseased workers under the ODA. He noted that had he

been classified as an injured worker under the WCA, he would have received more benefits than he did under the ODA. Eastman contended that benefits payable under the WCA and the ODA should be the same. However, the Court rejected his argument and concluded that "the equal protection clause does not require that all aspects of occupational disease and occupational injury be dealt with in the same manner." Eastman, 237 Mont. at 339, 777 P.2d at 866. Given the historical reasons for the enactment of the ODA and the treatment of workers suffering from an "occupational disease," we held that there was a rational basis for the difference in benefits awarded under that statute. Accordingly, Eastman failed to establish a constitutional violation. Eastman, 237 Mont. at 339, 777 P.2d at 866.

¶42. Eastman is readily distinguishable from this case for two reasons. First, Eastman addressed the degree of benefits awarded to claimants under the WCA and the ODA, while this case deals with the provision of certain benefits to one group of workers and the wholesale denial of the same benefits to another similarly situated group.

¶43. Second, Eastman filed his claim for compensation benefits in 1985, prior to the 1987 amendments to the WCA and the ODA. As pointed out earlier, after the 1987 amendments to the WCA and the ODA, the definitions of "injury" and "occupational disease" no longer focus on the nature of the medical condition, but rather focus on the number of work shifts over which the worker incurs an injury. Thus the historical justification for treating workers differently under the WCA and the ODA no longer exists. Indeed, the entire underpinnings of Eastman have evaporated, rendering its continued validity questionable.

¶44. In sum, we can see no rational basis for treating workers who are injured over one work shift differently from workers who are injured over two work shifts. Simply put, a herniated disc is a herniated disc. Rehabilitation benefits promote the policy of early return to work for both classes of workers.

¶45. We conclude that providing rehabilitation benefits to workers covered by the WCA, but not to workers covered by the ODA, is not rationally related to the legitimate governmental interest of returning workers to work as soon as possible after they have suffered a work-related injury. We hold that the ODA violates the equal protection clause of the Montana Constitution to the extent that it fails to provide vocational rehabilitation benefits. The decision of the Workers'

**Compensation Court is reversed and this case is remanded for further proceedings consistent with this opinion.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER