JUSTICE TRIEWEILER
dissenting.
¶72 I concur with the majority’s conclusion that the Missoula Irrigation District has standing to challenge the constitutionality of § 85-7-1802(2), MCA (1997), and § 85-7-1846, MCA (1997) (terminated Dec. 31,1998, Section 5, Ch. 306, L. 1997).
¶73 I dissent from the majority’s conclusion that the statutes in question did not violate the constitutional right to equal protection of the law and although it was not an issue raised by the parties, I would *338 point out for future reference that the statutory classification also violates the prohibition at Article V, Section 12 of the Montana Constitution against “special” legislation.
¶74 Sections 85-7-1802(2) and 85-7-1846, MCA, treat the Missoula Irrigation District (an urban area) differently than other urbanized irrigation districts in the state of Montana. It allows landowners to be excluded from payment of future assessments in the district based on statutory criteria which are simpler than those that apply to any other irrigation district in the state. The ultimate result is to erode the financial stability of the Missoula District while at the same time assuring that other districts are not similarly affected.
¶75 The Missoula Irrigation District is a corporation. We have previously held that corporations are entitled to the same equal protection of the law as individuals. See Montana Power Co. v. Public Service Commission (1983), 206 Mont. 359, 364, 671 P.2d 604, 607.
¶76 I agree that whether or not the statutes at issue in this case are constitutional depends on whether there was a rational basis for their enactment. I also agree that whether there was a rational basis is properly analyzed pursuant to the two-part test set forth in Henry v. State Compensation Ins. Fund, 1999 MT 126, ¶ 33, 294 Mont. 449, ¶ 33, 982 P.2d 456, ¶ 33. Finally, I agree with the majority’s conclusion that there was a legitimate state objective for the statute in question. That objective, based on the title of the act itself, was to allow “Individual owners ... that are not being served by the irrigation district works to be eliminated from assessments over and above the current indebtedness; ....” However, I disagree with the majority’s conclusion that the statute as enacted and the classifications that it creates bear a rational relationship to the purported objective of the legislation.
¶77 If the legitimate objective of the legislation was to actually make it easier for property owners in urbanized irrigation districts who are not being served by irrigation to avoid the expense of providing irrigation to others and withdraw from the district, then it makes no sense to limit the beneficial purpose of this statute to only those who reside in the Missoula Irrigation District and are fortunate enough to have the bill’s sponsor as one of their fellow residents within the district. It is clear that that is what was done. There is only one irrigation district within the state of Montana to which this statute applies and the statute’s sponsor and his fellow legislators made clear that was their intent.
¶78 When introducing the bill, Senator Michael Halligan, from *339 Missoula, stated:
This bill is an attempt, in a very clean way, to allow people to be excluded from a district only for those parcels that are small. If there is a way to fine-time this bill to make sure it applies more to the Missoula situation and doesn’t affect anybody else, we will certainly try to do that.
Section 4, Ch. 306, L. 1987 (SB 284 Senate Ag. Committee Hearing (Feb. 12,1997)).
¶79 During discussion of Senator Halligan’s bill in executive session of the senate committee to which it was introduced, the following comments were made:
Sen. Jergeson: It looks like he’s tightened this bill down so it will only apply to one irrigation district in the state without mentioning any particular city by name.
Sen. Devlin: I hope this doesn’t affect anyplace else. We’ve got the population in here, but I would sure hate to see it affect Butte Silverbow.
Doug Sternberg: My indication from Senator Halligan, in putting these amendments together, was avoiding some kind of specialized intent in this Legislation, but drawing it narrow enough to address the Missoula situation. I think the population insert is going to be the closest [figure]. According to the information given to me by the Missoula Deputy County Attorney, Missoula County is the only one that will fit in this particular formula at this time.
Section 4, Ch. 306, L. 1997 (SB 284 Senate Ag. Committee Exec. Action (Feb. 12,1997)).
¶80 There was even concern that while the statute was narrowly enough drawn to affect only Missoula, it could become applicable to other irrigation districts in the future simply by growth of the communities near which they are located. The Helena Valley, Billings, Great Falls and the area around Flathead County were all mentioned. The solution to that problem was to sunset the bill before those communities grew to meet the criteria set forth in the statute. For example:
Sen. Beck: There is a lot of concern about this affecting things down the road. What if we submitted this for two years? It will serve its purpose and put a hammer on those people. I don’t think this is a problem in all districts.
Sen. Devlin: I could support that. We could take a look at this in *340 two years and if it’s not working by then, take the sunset off and let it go.
Sen. Beck: That would make us all feel a little better.
Doug Sternberg: It’s drawn. Senator Halligan was thinking of that.
Section 4, Ch. 306, L. 1997 (SB 284 Senate Ag. Committee Exec. Action (Feb. 17,1997)).
¶81 For that reason, the statute was sunsetted to terminate on December 31,1998, eliminating any possibility that it might affect any other irrigation district in the state.
¶82 The majority correctly states the law but then ignores it. As noted in ¶ 43 of the majority Opinion, we have stated:
A classification that is patently arbitrary and bears no rational relationship to a legitimate governmental interest offends equal protection of the laws. As we have previously held, equal protection of the laws requires that all persons be treated alike under like circumstances.
Henry, ¶ 36 (quoting Davis v. Union Pacific R. Co. (1997), 282 Mont. 233, 242-43, 937 P.2d 27, 32).
¶83 Sections 85-7-1802(2) and 85-7-1846, MCA, do not treat all persons alike under like circumstances. Property owners in an urbanized irrigation district in Missoula are allowed to freely remove themselves from taxation by that district simply by showing they do not benefit from the irrigation whereas similarly situated property owners in other urbanized irrigation districts around the state are denied the same option. Not only has the Missoula Irrigation District been singled out for unfavorable treatment, the property owners in the Missoula Irrigation District have been singled out for favorable treatment. The sole reason is that a legislator whose property was apparently not benefitted by irrigation happened to own property within the Missoula Irrigation District. However, that is not a rational basis for the class distinctions that have been drawn.
¶84 The majority rationalizes its conclusion by stating that it was not arbitrary for the Legislature “to address this problem by tailoring legislation to the unique circumstances presented by the City of Missoula.” However, the City of Missoula’s circumstances were not unique and Halligan’s colleagues acknowledged as much when Senator Jergeson stated:
It looks like he’s [Halligan] tightened this bill so that it will only apply to one irrigation district in the state without mentioning any particular city by name. Apparently some of the other *341 irrigation districts are feeling the same urban pressure.
Section 4, Ch. 306, L. 1997 (SB 284 Senate Ag. Committee Exec. Action (Feb. 17,1997)).
¶85 The only thing unique about the City of Missoula was that the irrigation district included a property owner who happened to be a state senator.
¶86 Because of the broad language in the majority Opinion which appears to approve this type of special interest legislation, it should also be mentioned in passing (although MID did not raise the issue on appeal) that the legislation in question violates Article V, Section 12 of the Montana Constitution which provides as follows:
The legislature shall not pass a special or local act when a general act is, or can be made, applicable.
¶87 It is obvious from any fair reading of the legislative history of the statute that the Legislature went to great lengths to make the effects unique to Missoula when in fact the problem the legislation sought to remedy was not unique to Missoula. A general act which would have made it easier for all land owners in urban irrigation districts who do not benefit from irrigation to be excluded from the irrigation district would have more honestly accomplished the stated purpose of the legislation. It was not necessary to the stated purpose of the legislation to make the act local.
¶88 We defined a special statute within the meaning of the corresponding section of our previous constitution in State ex rel Redman v. Meyers (1922), 65 Mont. 124, 127, 210 P. 1064, 1065-66, where we stated:
A special statute is one which relates to a particular person or things of a class [citation omitted] or one made for individual cases and for less than a class. [Citation omitted.] Or one which relates and applies to particular members of a class, either particularized by the express terms of the Act or separated by any method of selection from the whole class to which the law might, but for such limitation, be applicable. [Citation omitted.] The test of a special law is the appropriateness of its provisions and the objects that it excludes. It is not, therefore, what a law includes, but what it excludes that determines whether it is special. [Citation omitted.]
¶89 We went on to state:
A fair test for determining whether a statute is special is this: does it operate equally upon all of a group of objects which, having regard to the purpose of the legislature, are distinguished by *342 characteristics sufficiently marked and important to make them a class by themselves?
State ex rel Redman v. Meyers, 65 Mont. at 128, 210 P. at 1066. (Citation omitted.)
¶90 Providing expeditious relief for property owners in the Missoula Irrigation District who are not benefitted by irrigation while denying it to the property owners of every other urbanized irrigation district in the state who are similarly not benefitted by irrigation and conversely undermining the financial integrity of the Missoula Irrigation District while at the same time protecting other urbanized irrigation districts from the same danger does not treat all similarly situated groups the same given the purpose of the legislation. Therefore, for future reference, it should be noted that this special interest legislation also clearly violates Article V, Section 12 of the Montana Constitution.
¶91 For these reasons, I dissent from the majority Opinion. Having concluded that the statutes in question are unconstitutional because in violation of the equal protection clause found at Article II, Section 4 of the Montana Constitution, I would not address the remaining issues related to due process and res judicata.