No. 13659

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

SANDRA S. JOHNSON,

              Plaintiff and Appellant,

-vs-

ROBERT E. SULLIVAN et al.,

              Defendants and Respondents.

---

Appeal from: District Court of the Fourth Judicial District,
        Honorable Jack L. Green, Judge presiding

Counsel of Record:

    For Appellant:

    William George Harris argued, Missoula, Montana

    For Respondents:

    George L. Mitchell argued, Missoula, Montana

---

Submitted: June 22, 1977

Decided: NOV 16 1977

Filed:

*Thomas J. Kenney*

                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff Sandra S. Johnson appeals from a judgment of the District Court, Missoula County, upholding her exclusion from the School of Law of the University of Montana for failure to meet academic standards. By her action plaintiff sought readmission to the law school, the removal from her academic record of a grade of F received in a Constitutional Law course, and to have her cumulative grade point average computed without regard to this failing grade.

Defendants, hereinafter referred to as the University are: Robert E. Sullivan, Dean of the School of Law of the University of Montana; Richard C. Bowers, President of the University of Montana; and Lawrence K. Pettit, Commissioner of Higher Education of the State of Montana.

Following trial of the cause without a jury, the District Court entered judgment denying the relief sought and rescinding a restraining order and injunction pendente lite under which plaintiff had been permitted to attend classes.

Plaintiff entered the University of Montana School of Law in the fall of 1973, and successfully completed her first two semesters of study. She received a grade of F in the Constitutional Law course and grades of D in two other courses taken during her third semester, and consequently, was deficient by eleven grade points at the end of that semester. Plaintiff was excluded from the law school under the applicable exclusionary rule which provides that students with a deficiency of six or more grade points at the end of their third semester are not allowed to continue their law studies. Plaintiff's second petition for readmission subsequent to that exclusion was granted by the law school faculty, and she returned for the next academic year. At the end of that year, her academic performance was deficient by eight grade points. Plaintiff was

-2-

excluded again, in this instance for failure to meet the law school requirement that a student have a cumulative grade point average of 2.0, which is a zero grade point deficiency, at the completion of the fourth semester.

Plaintiff again petitioned for readmission. The petition was denied. She then brought this action and obtained a restraining order and injunction pendente lite permitting her to attend third-year classes. Following entry of judgment against her in the District Court, plaintiff appealed and obtained a stay of judgment and a restoration of the injunction pending determination of the merits on appeal.

The central issue on appeal is whether the practices, policies, rules and procedures under which the fitness of a student to continue the study of law is appraised, as applied to plaintiff, violate Constitutional requirements of due process and equal protection and section 93-2002, R.C.M. 1947.

Plaintiff's argument with respect to this issue is based on her contention that the method by which the University computed her cumulative grade point average is unfair and unreasonable.

The University computes a student's cumulative grade point average by dividing the number of grade points earned by the number of credits undertaken. For the purpose of this determination, four grade points are assigned for each credit of A, three grade points for each credit of B, two grade points for each credit of C, one grade point for each credit of D, and zero grade points for each credit of F.

Under the general University rule, the last grade received in a repeated course replaces the prior grade. If a student repeats a course for which he or she initially received a grade of F, the student's cumulative grade point average reflects only the last grade earned; the failing grade is not applied to the computation of the student's cumulative grade point average.

In the School of Law, however, a student's cumulative grade point average is computed on the basis of all courses for which a student has registered and received a grade. If a grade of F is received in a law school course and the course is repeated, both the initial F and the last grade received are included in the computation of the student's cumulative grade point average. In effect, the law school averages both grades received in a repeated course, while other schools and departments of the University generally do not.

Plaintiff received her failing grade in Constitutional Law, a course required for graduation from the School of Law. By law school regulation, she therefore was required to repeat the course. In the repeated course, as in all courses taken during the academic year following her readmission, plaintiff received a passing grade. Her cumulative grade point average, however, remained below the 2.0 required of law students at the end of their fourth semester. This deficiency can be attributed to the continuing application of the failing grade to plaintiff's cumulative grade point average.

Plaintiff first contends this method of computing a student's cumulative grade point average, as applied to her, violates due process requirements and denies a fair and equal application of the academic requirements for graduation.

The test for determining whether due process requirements are met was set forth by this Court in Milk Control Board v. Rehberg, 141 Mont. 149, 155, 376 P.2d 508 (1962). Quoting the United States Supreme Court in Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469 (1934), this Court stated:

> " * * * '[T]he guaranty of due process * * * demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained.' * * * "

In the present case, the question is whether it is unreasonable, arbitrary, or capricious for the University to include both grades

received for a repeated course in its computation of a law student's cumulative grade point average. Resolution of this question turns on the relation between that method of computation and the objectives the University has in determining a grade point average.

The immediate objective of any method of computing a grade point average is to provide an accurate, easily understood measure of academic performance. As it relates to the law school's exclusionary rule, a student's grade point average is used as an indication of his or her presumed fitness to continue the study of law. If a student's grade point average falls below a set standard, University rules authorize the law school to exclude the student from further study.

Because of this state's "diploma privilege", graduates of the School of Law may be admitted to practice on motion; they are not necessarily required to take and pass the state's bar examination. Graduation from the School of Law, therefore, virtually guarantees admission to practice. Ultimately, then, the object of measuring academic performance and allowing or precluding a law student's continued study on the basis of that performance is to assure that graduates of the School of Law are qualified to enter practice.

The University argues that its method of computing law students' cumulative grade point averages is reasonably related to the objectives of determining first, academic competence, and ultimately, in light of the "diploma privilege", the probability of professional competance. At the trial of the present case, Robert E. Sullivan, Dean of the School of Law, testified the rule requiring the application of both grades received for a repeated course "goes to the determination of a capacity and capability of a person to become a lawyer." He also testified that the law school faculty, in promulgating this rule, considered that a repeater would have the benefit of having taken the course before, and would have a competitive ad-

vantage over students taking the course for the first time. It was the law school faculty's judgment that capacity in a repeated course would be more accurately reflected by an averaging of the grades received than by disregarding the first grade.

Plaintiff concedes that the School of Law is responsible for ensuring that its graduates are qualified and competent to serve the courts and people of this state. She contends the rule by which both grades received in a repeated course were applied in the computation of her cumulative grade point average bears no reasonable relation to the law school's goal of meeting this responsibility.

Plaintiff asserts that she has established competence in Constitutional Law by receiving a grade of C for the course in her second attempt. She argues that only the passing grade should be treated as indicative of her competence in Constitutional Law. This argument is based for the most part on plaintiff's interpretation of the effect of the law school's acceptance of her second petition for readmission following her first exclusion.

The law school rule on readmission at that time stated:

"A student excluded on the basis of substandard academic performance shall not be readmitted, except in extraordinary cases when satisfactory showing is made to the faculty, by written petition, that the substandard performance was the result of unusual circumstances beyond the control of the student, that such circumstances no longer exist, and that the student has the capability and desire to perform satisfactory work."

The "unusual circumstances" that existed during the semester in which plaintiff received the failing grade were complications due to pregnancy. These circumstances were detailed in plaintiff's successful petition for readmission. Plaintiff argues that by granting that petition, the law school faculty impliedly found the failing grade to be invalid.

The University contends the granting of a petition for re-admission does not have this effect. Facts adduced at trial indicate

the law school faculty has no means by which they can determine whether circumstances alleged in such a petition actually existed or whether the student's substandard performance was related to those circumstances. Taking the petition at face value, and examining the academic record of the student, the law school faculty decides by majority vote simply whether the student merits another opportunity.

Plaintiff would have this Court declare the first grade she received in Constitutional Law is invalid and the University, therefore, should be precluded, on due process grounds, from using that first grade in the measurement of her academic competence. This we decline to do.

In Connelly v. University of Vermont and State Agricultural College, 244 F.Supp. 156 (D. Vermont 1965), a third year medical student alleged he had been arbitrarily given a failing grade in a required course in an action seeking readmission following his dismissal for academic deficiency. The court held that the question of the arbitrariness of the university's action was a factual determination, and accordingly denied the university's motion to dismiss. In language relevant to the present case, at 160 of 244 F.Supp., that court discussed the boundaries of such a claim:

> "The effect of these decisions [concerning student dismissals for failure to attain a proper standard of scholarship] is to give the school authorities absolute discretion in determining whether a student has been delinquent in his studies, and to place the burden on the student of showing that his dismissal was motivated by arbitrariness, capriciousness, or bad faith. The reason for this rule is that in matters of scholarship, the school authorities are uniquely qualified by training and experience to judge the qualifications of a student, and efficiency of instruction depends in no small degree upon the school faculty's freedom from interference from other noneducational tribunals. It is only when the school authorities abuse this discretion that a court may interfere with their decision to dismiss a student." (Bracketed material added.)

There is no dispute that plaintiff was apprised of the rule requiring the inclusion of the first grade received for a repeated

course in the computation of her cumulative grade point average. The applicable general University catalog and law school bulletin explicitly provide that the first grade received in a repeated course remains on the student's record "for all purposes". There is also no dispute that the University applied this method in its computations of the cumulative grade point averages of all students in the School of Law. Plaintiff has shown neither arbitrary action on the part of the University with respect to its promulgation of the rule itself nor arbitrariness in the University's application of the rule in its measurement of her academic performance.

This state's "diploma privilege" does not divest the University of its discretion to set standards for the measurement of academic competence. Absent a showing that these standards were arbitrarily or capriciously set or applied, this Court will not find them to be unrelated to the ultimate object of ensuring that graduates of the School of Law are qualified to enter practice.

Plaintiff next contends the differing methods used by the University in computing cumulative grade point averages of law students and students in other disciplines reflect a classification that violates equal protection guarantees.

Clearly, a law student is treated differently than other University students in this respect; the University does not dispute the effect of the differing rules is to classify students according to their field of study. However, the existence of a classification does not of itself constitute a denial of equal protection. Great Falls Nat. Bank v. McCormick, 152 Mont. 319, 323, 448 P.2d 991 (1968).

When, as in the present case, the classification is neither based on a "suspect criterion" such as race, wealth, nationality, or alienage, nor affects a "fundamental right" such as the right to vote, the right of interstate travel, or the right to freedom of speech, the "rational basis" test is applied to determine its con-

stitutionality. In Montana Land Title Assoc. v. First American Title, 167 Mont. 471, 475, 476, 539 P.2d 711 (1975), this Court stated:

" * * * While reasonable classification is permitted without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction bearing a reasonable and just relation to the things in respect to which such classification is imposed; such classification cannot be arbitrarily made without any substantial basis. * * *"

As the Supreme Court of Washington stated in DeFunis v. Odegaard, 82 Wash.2d 11, 507 P.2d 1169, 1181 (1973):

" * * * the question is whether the classification is reasonably related to a legitimate public purpose. And, in applying this 'rational basis' test, '[A] discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)."

There are many practical differences between the School of Law and other schools and departments of the University; for example, instruction methods and examination procedures differ, as do attendance policies and requirements for class preparation. The different methods used in the computation of cumulative grade point averages of law students is not the only dissimilarity which reflects the distinction between law students and students in other graduate or undergraduate areas of study.

It is not unreasonable to classify students in this manner. The study of law is substantively different from the study of English, or forestry, or pharmacy. The use of different methods to measure academic performance among the various schools and departments of the University indicates this difference has been recognized.

There is no classification of students within the law school with respect to the computation of their cumulative grade point averages; all law students who repeat a course have the first grade received in that course included in the computation. There is no denial of equal protection in measuring the academic performance of

law students by a method that is not employed by other schools and departments of the University.

Plaintiff's final contention is that even if the University's method of computing her cumulative grade point average is found to be valid, and her academic record accordingly is unchanged, it was arbitrary and capricious for the law school faculty to deny her petition for readmission. Plaintiff does not challenge the exclusionary standard, which provides that law students must have a 2.0 cumulative grade point average at the completion of their fourth semester. She asserts that she should have been readmitted despite her failure to meet this standard.

Plaintiff argues that since other students with an academic deficiency have been readmitted, her exclusion on that basis is unfair. Certainly, not all petitions for readmission are granted. Plaintiff does not argue that the law school faculty should be required to either grant or deny all such petitions. She neither presented nor offered any proof that would tend to show her petition was not given the same consideration that is given to the petitions of other students similarly excluded. Absent any showing of discriminatory or arbitrary treatment by the faculty in their review of her petition for readmission, we must conclude that her contention is groundless and her petition was properly denied.

For the reasons set forth above, the judgment of the District Court is affirmed.

_Daniel J. Shea_
Justice

We Concur:

_Paul G. Hatfield_
Chief Justice

_Frank I. Haswell_

_Gen B. Daly_

_John Conway Harrison_
Justices

-10-