No. 03-639

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2004 MT 370

_____

DALE REESOR,

        Petitioner and Appellant,

    v.

MONTANA STATE FUND,

        Respondent and Insurer.

_____

APPEAL FROM:    Workers' Compensation Court, State of Montana,
                 The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Thomas J. Murphy (argued), Murphy Law Firm, Great Falls, Montana

        For Respondent:

                Thomas E. Martello (argued), Special Assistant Attorney General, Montana State Fund, Helena, Montana

        For Amicus Montana Self-Insurers Association:

                Bradley J. Luck, Robert E. Sheridan (argued), Garlington, Lohn & Robinson, PLLP, Missoula, Montana

        For Amicus Montana Trial Lawyers Association:

                Laurie Wallace (argued), Bothe & Lauridsen, P.C., Columbia Falls, Montana

_____

                Argued and Submitted: May 5, 2004
                          Decided:   December 22, 2004

Filed:

              _____
                          Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Dale Reesor (Reesor) filed a petition for hearing before the Workers' Compensation Court in which he alleged he suffered injury arising out of and in the course of his employment with Northwest Equipment in Cascade County, Montana, an employer insured by the State Compensation Insurance Fund (State Fund). Reesor contended that § 39-71-710, MCA, unconstitutionally denied him equal protection under the laws; specifically, he received lower permanent partial disability (PPD) benefits because of his age. The Workers' Compensation Court rejected Reesor's claim and held § 39-71-710, MCA, was constitutionally sound because the receipt of social security retirement benefits, or eligibility for such benefits, was a rough yardstick for determining whether there will be future wage loss, and thus the statutory framework did not violate equal protection guarantees. Reesor appeals from this conclusion. We reverse and remand.

¶2    The only issue on appeal is whether the age limitation on PPD benefits, set forth in § 39-71-710, MCA, violates Article II, Section 4 of the Montana Constitution.

BACKGROUND

¶3    On January 13, 2000, Reesor injured his right shoulder when he fell from the back of a truck in the course and scope of his employment with Northwest Equipment in Cascade County, Montana. Reesor was sixty-five years old at the time of injury. He began receiving social security retirement benefits on May 24, 1999, his sixty-fifth birthday.

¶4    He reached maximum medical improvement on May 10, 2002, and his doctor rated him at four percent permanent partial impairment. The State Fund paid temporary total disability benefits from January 22, 2000, through August 2, 2002. At that point, the State

2

Fund paid PPD from June 10, 2002, through September 15, 2002, a total of fourteen weeks of PPD/Impairment benefits or $2,975, representing his impairment award.

¶5	Due to his age, Reesor received no other PPD benefits other than the impairment award. Pursuant to § 39-71-710, MCA, Reesor was not eligible to receive expanded PPD benefits based on other enumerated factors set forth in § 39-71-703, MCA, specifically, age, education, lifting restrictions and wage loss. If he had been eligible for additional benefits pursuant to statute, he would have received an additional entitlement of $20,081.25 in PPD benefits.

## STANDARD OF REVIEW

¶6	When reviewing a question of constitutional law, this Court reviews conclusions of law to determine whether they are correct. *Henry v. State Compensation Ins. Fund*, 1999 MT 126, ¶ 10, 294 Mont. 449, ¶ 10, 982 P.2d 456, ¶ 10. Statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute bears the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional. *State v. Butler*, 1999 MT 70, ¶ 8, 294 Mont. 17, ¶ 8, 977 P.2d 1000, ¶ 8.

## DISCUSSION

¶7	Whether the age limitation on PPD benefits, set forth in § 39-71-710, MCA, violates Article II, Section 4 of the Montana Constitution.

¶8	Article II, Section 4, of the Montana Constitution provides that "[n]o person shall be denied the equal protection of the laws." Reesor contends the failure of the Workers' Compensation Act (WCA) to extend the same PPD benefits to "retired persons" as to younger workers, pursuant to § 39-71-710, MCA, violates his rights to equal protection under the Montana Constitution.

3

¶9 Section 39-71-710, MCA, termination of benefits upon retirement, provides:

(1) If a claimant is receiving disability or rehabilitation compensation benefits and the claimant receives social security retirement benefits or is eligible to receive or is receiving full social security retirement benefits or retirement benefits from a system that is an alternative to social security retirement, the claimant is considered to be retired. When the claimant is retired, the liability of the insurer is ended for payment of permanent partial disability benefits other than the impairment award, payment of permanent total disability benefits, and payment of rehabilitation compensation benefits. However, the insurer remains liable for temporary total disability benefits, any impairment award, and medical benefits.
(2) If a claimant who is eligible under subsection (1) to receive retirement benefits and while gainfully employed suffers a work-related injury, the insurer retains liability for temporary total disability benefits, any impairment award, and medical benefits.

¶10 When addressing an equal protection challenge, this Court must first identify the classes involved, and determine if they are similarly situated. *Geil v. Missoula Irr. Dist.*, 2002 MT 269, ¶ 35, 312 Mont. 320, ¶ 35, 59 P.3d 398, ¶ 35. Reesor maintains the two classes involved in this appeal are: (1) PPD eligible claimants who receive or are eligible to receive social security retirement benefits; and (2) PPD claimants who do not receive and are not eligible to receive social security retirement benefits.

¶11 The State Fund initially challenges Reesor's classification scheme contending these classes are not similarly situated because the added benefit of social security serves the same purpose as replacing lost wages, and specifically, Reesor only suffers a partial wage loss yet receives full social security retirement benefits. Corollary to this argument is the State Fund's assertion that workers' compensation benefits and social security retirement benefits are part of an integrated system of wage loss benefits, and both benefits serve the same purpose to restore earnings due to wage loss, the cause of wage loss being irrelevant. Relying upon *Watson v. Seekins* (1988), 234 Mont. 309, 763 P.2d 328, it contends workers'

4

compensation offset statutes prevent double dipping, and receiving both social security retirement benefits *and* disability benefits is, in essence, double dipping.

¶12     We agree with Reesor, however, when he asserts that both classes are similarly situated because both classes have suffered work-related injuries, are unable to return to their time of injury jobs, have permanent physical impairment ratings and must rely on § 39-71-703, MCA, as their exclusive remedy under Montana law.  The claimant's age, as a result of eligibility to receive social security retirement benefits, is the only identifiable distinguishing factor between the two classes.  Furthermore, chronological age and the corresponding eligibility for social security retirement benefits is unrelated to a person's ability to engage in meaningful employment.  Therefore, we conclude the classes are similarly situated for equal protection purposes.

¶13     Next, in addressing an equal protection challenge, we must select the appropriate level of scrutiny to apply to the challenged legislation.  When reviewing equal protection challenges, we apply one of three recognized levels of scrutiny: strict scrutiny, middle-tier scrutiny, or rationality review.  *Powell v. State Compensation Ins. Fund*, 2000 MT 321, ¶¶ 17-19, 302 Mont. 518, ¶¶ 17-19, 15 P.3d 877, ¶¶ 17-19.  This Court applies strict scrutiny, the most stringent level of review, when a law affects a suspect class or threatens a fundamental right.  Under this standard, the State has the burden of showing the law is narrowly tailored to serve a compelling government interest.  *Powell*, ¶ 17.  We apply middle-tier scrutiny when the law affects a right conferred by the Montana Constitution, but is not found in the Constitution's Declaration of Rights.  *Powell*, ¶ 18.  Middle-tier scrutiny requires the State to demonstrate the law in question is reasonable and its interest in the resulting classification outweighs the value of the right to an individual.  *Powell*, ¶ 18.  We

apply the rational basis test when neither strict nor middle-tier scrutiny applies. Under this standard, the government must illustrate that the objective of the statute is legitimate and such objective is rationally related to the classification used by the Legislature. *Powell*, ¶ 19.

¶14    The Workers' Compensation Court applied the rational basis test to Reesor's equal protection challenge to § 39-71-710, MCA. Relying heavily upon *Butte Community Union v. Lewis* (1986), 219 Mont. 426, 712 P.2d 1309, Reesor sets forth various arguments to suggest his claim deserves middle-tier level of scrutiny. However, we see no need to depart from our analysis set forth in *Henry* wherein we stated that equal protection claims brought by an injured worker are generally reviewed pursuant to the rational basis test. *See Henry*, ¶ 32.

¶15    We next turn to the heart of equal protection analysis, that is, whether the government's stated objective bears a rational relationship to the statutory classification adopted by the Legislature and set forth in § 39-71-710, MCA. We said in *Henry* that "[a] classification that is patently arbitrary and bears no rational relationship to a legitimate governmental interest offends equal protection of the laws. As we have previously held, equal protection of the laws requires that all persons be treated alike under like circumstances." *Henry*, ¶ 36 (quoting *Davis v. Union Pacific R. Co.* (1997), 282 Mont. 233, 242-43, 937 P.2d 27, 32).

¶16    It is well settled that the rational basis test requires the government to show the contested statute had a legitimate objective, and such objective bears a rational relationship to the classification adopted by the Legislature. *Henry*, ¶ 33. The Legislature articulated Montana's public policy and objective of our workers' compensation laws in § 39-71-105, MCA, which states in pertinent part:

6

> For the purposes of interpreting and applying Title 39, chapters 71 and 72, the following is the public policy of this state:
>
> (1) It is an objective of the Montana workers' compensation system to provide, without regard to fault, wage supplement and medical benefits to a worker suffering from a work-related injury or disease. Wage-loss benefits are not intended to make an injured worker whole; they are intended to assist a worker at a reasonable cost to the employer. Within that limitation, the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of a work-related injury or disease.

¶17 Again, the State Fund urges that social security retirement benefits and state disability benefits serve the same purpose of restoring earnings due to wage loss and relies on a Washington State Supreme Court opinion, *Harris v. Dept. of Labor* (Wash. 1993), 843 P.2d 1056, for the proposition that the cause of wage loss, whether retirement, disability or unemployment, is not relevant. As such, it asserts the purpose of § 39-71-710, MCA, is to coordinate wage replacement benefits and avoid duplicity in the award of benefits.

¶18 We see no reason to rely on case law from other jurisdictions, however, when our Legislature has clearly and unambiguously spoken. *See Henry*, ¶ 35. As clearly pronounced in § 39-71-105(1), MCA, the primary goal of workers' compensation benefits is to establish a wage replacement for injured workers, certainly a legitimate and appropriate governmental interest.

¶19 The issue in this case is whether it is fair to deny men and women full PPD benefits simply because their age makes them eligible to receive social security retirement or similar benefits. We conclude that the disparate treatment of partially disabled claimants based upon their age, because they are receiving or are eligible to receive social security retirement benefits, is not rationally related to that legitimate governmental interest.

¶20 The State Fund reasons § 39-71-710, MCA, is rationally related to a legitimate government goal because the Legislature is simply attempting to coordinate the wage loss

7

benefits provided by social security retirement with PPD benefits provided by workers' compensation; it argues this is a legitimate and worthwhile legislative attempt to provide relief to employers who are compelled to contribute to the program. It asserts it is entirely rational for the Legislature to limit a claimant from receiving double benefits for the same loss. Relying upon *Flynn v. State Compen. Ins. Fund*, 2002 MT 279, 312 Mont. 410, 60 P.3d 397, and *Watson*, amicus asserts this Court has recognized the interrelatedness of wage loss benefits and the legitimate rationale for prevention of over-replacement or duplication of disability paid.

¶21 Reesor contends § 39-71-710, MCA, contravenes the WCA's public policy because it departs from analysis based on wage loss, and instead hinges its denial of benefits based upon an injured worker's age alone--being eligible for social security benefits at the age of 65. The Amici correctly point out that while under other circumstances, the WCA does provide for reduction of benefits in order to offset receipt of other *disability benefits*, such as social security *disability* benefits, the Act does not dictate the elimination of such benefits. They contend there is no legitimate rationale to completely eliminate a class of benefits to otherwise eligible claimants simply because of their age. We further observe, as pointed out by Reesor, that there is no coordination between the two social systems--WCA and social security retirement benefits. He questions why WCA benefits should be reduced by eligibility of social security retirement benefits when injury does not increase one's amount of social security benefit.

¶22 As a preliminary matter, the WCA is an exclusive statutory remedy whereby an injured worker gives up the right to sue in tort in exchange for guaranteed wage loss compensation for his injuries. The WCA contemplates only wage loss due to injury; it is not

8

a need based system. While workers' compensation and social security retirement may be similar in that both are social programs, social security retirement benefits, unlike workers' compensation, provide the recipient with supplemental income *after* he contributes to the program throughout his working life. Once a recipient qualifies to receive social security retirement by working the requisite number of quarters, the triggering event to receive benefits is reaching the retirement age as specified by the federal statute. This is in direct contrast to workers' compensation benefits which are available *only* if a worker is injured while in the course and scope of employment and experiences wage loss as a result of such injury.

¶23    We also conclude that the *Flynn* and *Watson* cases are distinguishable. Both cases addressed reduction of *disability* benefits through the offset provisions of the WCA. As we said earlier, social security retirement benefits and social security disability benefits are two distinct programs and cannot offset one another due to the fact that both programs are based on completely different concepts. We see no reason why a forty-year-old injured worker should receive full PPD benefits pursuant to § 39-71-703, MCA, and a sixty-five-year-old worker with an identical injury should receive only an impairment award due to the fact he has reached social security retirement age. There is no rational basis to deny a class of injured workers a category of benefits based upon their age.

¶24    The dissent urges that there was a clear purpose to this legislation: to prevent double payment to an employee out of two different government programs which are designed to replace a loss of wages. The problem with this analysis is that social security retirement benefits are not wage loss benefits. There is no requirement that to be entitled to social security benefits a person must stop working. In 2000, the federal government enacted the

9

Senior Citizen's Freedom to Work Act (42 U.S.C. 402) which eliminated the earnings limit for workers over the age of 65. Thus, there is no longer a reduction in social security retirement benefits due to wages regardless of the amount of wages earned by individuals age 65 and older.

¶25 Therefore, we conclude that providing PPD benefits to a younger person in Reesor's situation in the amount of $23,056.25 under the WCA, but limiting Reesor's benefit, based on his age, to only $2,975 pursuant to § 39-71-710, MCA, violates the Equal Protection Clause found in Article II, Section 4 of the Montana Constitution. There has been a failure to demonstrate a rational basis for the infringement of such a constitutionally protected right, therefore, we hold that § 39-71-710, MCA, is unconstitutional.

¶26 We reverse the decision and judgment of the Workers' Compensation Court for re-determination of benefits due to Dale Reesor.

/S/ JIM REGNIER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON

Justice Jim Rice dissenting.

¶27 I respectfully dissent. In my view, the standards under the law of equal protection are neither fully stated nor applied by the Court.

> "The constitutionality of a legislative enactment is prima facie presumed, and *every intendment in its favor will be presumed*, unless its unconstitutionality appears beyond a reasonable doubt. *The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action* which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt."

> *Every possible presumption* must be indulged in favor of the constitutionality of a legislative act. The party challenging a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt and, *if any doubt exists, it must be resolved in favor of the statute*.

*Powell v. State Compensation Ins. Fund*, 2000 MT 321, ¶ 13, 302 Mont. 518, ¶ 13, 15 P.3d 877, ¶ 13 (citations omitted) (emphasis added) (quoting *Stratemeyer v. Lincoln County* (1993), 259 Mont. 147, 150, 855 P.2d 506, 508-09). We are to declare a statute to be valid "unless the constitutional violation is 'clear and palpable.'" *Linder v. Smith* (1981), 193 Mont. 20, 31, 629 P.2d 1187, 1193 (citing *Noll & Kenneady v. Bozeman* (1975), 166 Mont. 504, 507, 534 P.2d 880, 881). In my view, and for the reasons set forth herein, the Court has not engaged in an analysis with the purpose of determining "whether it is possible to uphold" the challenged legislation, granted "every possible presumption" in favor of the act, nor established that the asserted violation is "clear and palpable."

¶28 Neither has the Court stated what impermissible discriminatory purpose is at work here. "'It is a basic equal protection principle that the invidious quality of a law claimed to

be discriminatory must ultimately be traced to an impermissibly discriminatory purpose.' None exists here." *State v. Price*, 2002 MT 229, ¶ 41, 311 Mont. 439, ¶ 41, 57 P.3d 42, ¶ 41 (citation omitted). This is consistent with the United States Supreme Court's requirement that, in analyzing equal protection challenges to legislation, there must be "some reason to infer antipathy" in the act:

> [C]ourts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws. The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.

*Vance v. Bradley* (1979), 440 U.S. 93, 97, 99 S.Ct. 939, 942-43, 59 L.Ed.2d 171, 176. The Court has failed to identify any such impermissible purpose or antipathy.

¶29 These standards are particularly relevant when engaging in rational basis review, which requires the greatest amount of deference to be given the Legislature. "[I]n applying this 'rational basis' test, 'a discrimination will not be set aside if *any state of facts reasonably may be conceived to justify it*.'" *Johnson v. Sullivan* (1977), 174 Mont. 491, 498, 571 P.2d 798, 802 (emphasis added) (quoting *McGowan v. Maryland* (1961), 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399); *see also Kottel v. State*, 2002 MT 278, ¶ 55, 312 Mont. 387, ¶ 55, 60 P.3d 403, ¶ 55 ("a classification is reasonable if any reasonably conceivable state of facts provides a rational basis for it").

¶30 For these reasons, the Appellant strenuously argued that this Court should overrule our longstanding precedent which has applied rational basis review in these matters, *see*, for

example, *Powell*, ¶ 21, and asked the Court to apply middle tier scrutiny.  Rational basis review gives broad discretion to the Legislature and its enactments are to survive challenges if the Court can even *conceive* of a reason to justify the act.  The Court's action today adds to a recent trend of striking down legislative enactments despite the purported exercise of deferential rational basis review.[1]  I disagree with such application, believing it to be inconsistent with the law of equal protection.

¶31     The Legislature's purpose here is clearly set forth: to prevent double payment to an employee out of two different government programs, both of which are funded by the employer.  The Court rejects this purpose.  Without citation to authority, the Court offers its own analysis and reasons that social security retirement and workers' compensation serve distinct purposes, and thus, workers' compensation cannot be offset.  *See* ¶ 22.  However, though the Court may find the offset provision illogical, the science of the field acknowledges the inter-relational purpose of social security retirement and workers' compensation:

> Wage-loss legislation is designed to restore to the worker a portion . . . of wages lost due to the three major causes of wage loss: physical disability, economic unemployment, and old age.  The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. . . . The worker is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit.  *This conclusion is inevitable, once it is recognized that workers' compensation, unemployment compensation, non-occupational sickness and disability*

---

[1]*See Henry v. State Compensation Ins. Fund*, 1999 MT 126, 294 Mont. 449, 982 P.2d 456; *Stavenjord v. State Fund*, 2003 MT 67, 314 Mont. 466, 67 P.3d 229; *Schmill v. Liberty Northwest Ins. Corp.*, 2003 MT 80, 315 Mont. 51, 67 P.3d 290; and now this case.

13

> *insurance, and old age and survivors' insurance are all parts of a system based upon a common principle.* If this is denied, then all coordination becomes impossible and social legislation becomes a grab-bag of assorted unrelated benefits.

Larson, Workers' Compensation (2000), § 157.01 (emphasis added). Thus, the Court rejects the "conceivable basis" offered by the science of the field and, instead, substitutes its own judgment and analysis. However, that is not our duty, nor is it a proper application of rational basis review. The question under rational basis review is not whether the Court can fault the reasoning of the legislation, but, rather, whether the Court can find any reason to support it. Larson's analysis, set forth above, is just one way to demonstrate that a rational reason exists for the legislation. The Court thus errs in its duty.

¶32     This is precisely why, under our standards of constitutional review, we are required to presume such legitimate purpose. The Legislature may very well have known what it was doing. "We must assume that the Legislature was in a position and had the power to pass upon the wisdom of the enactment, and in the absence of an affirmative showing that there was no valid reason behind the classification, we are powerless to disturb it." *McClanathan v. Smith* (1980), 186 Mont. 56, 66, 606 P.2d 507, 513 (quoting *State ex rel. Hammond v. Hager* (1972), 160 Mont. 391, 399, 503 P.2d 52, 56).

¶33     More importantly, for this case, is the fact that we have already passed judgment on the legislative purpose at issue here, finding it permissible:

> In applying the equal protection clause to social and economic legislation, great latitude is given to state legislatures in making classification. *Levy v. Louisiana* (1968), 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436. . . . [W]here the goals of a classification are legitimate, and the classification is rationally related to the achievement of those goals, the statute should be constitutionally

14

upheld. *Here, the avoidance of duplication or overlapping of benefits is indeed a reasonable and permissive legislative objective.* Though [this] results in inequality to some, the statute is rationally related to the accomplishment of that objective. The statute is applied to individuals uniformly and equally, the difference in treatment relating only to differences in factual situations between individuals.

*McClanathan*, 186 Mont. at 67-68, 606 P.2d at 513 (emphasis added) (affirming workers' compensation offset for social security payments). *Stare decisis* requires that we follow this holding.

It must be evident to anyone that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility.

*Stratemeyer,* 259 Mont. at 150, 855 P.2d at 508 (citing *State v. Dixon* (1923), 66 Mont. 76, 84-85, 213 P. 227, 229). Here, it should be evident that the Court, in offering its own analysis which cites to no authority and ignores the science of the field, thus leading it to strike down legislation with a conceivable purpose, has failed to give "great latitude" to the Legislature in make classifications, has failed to give "every intendment" in favor of the legislation, and therefore, in sum, has failed to properly exercise rational basis review.

¶34 I would affirm the Workers' Compensation Court.

/S/ JIM RICE

Chief Justice Karla M. Gray and Justice John Warner join in the dissent of Justice Rice.

/S/ KARLA M. GRAY
/S/ JOHN WARNER

15