JUSTICE MORRIS
delivered the Opinion of the Court.
¶1 MACo Workers’ Compensation Trust (MACo) appeals from a determination of the Workers’ Compensation Court (WCC) that § 39-71-710, MCA, violates the Equal Protection Clause found in Article II, Section 4, of the Montana Constitution. We affirm.
¶2 We review the following issue on appeal:
¶3 Does the categorical denial of rehabilitation benefits to a workers’ compensation claimant violate equal protection when the basis for denial turns solely on the claimant’s age-based eligibility for social security benefits?
FACTUAL AND PROCEDURAL BACKGROUND
¶4 Harold Caldwell (Caldwell) worked as the Ravalli County airport *142 manager. On November 25,2005, he slipped on an icy airport taxiway, fell, and suffered traumatic head injuries. Caldwell was 77 years old at the time of his accident. The airport’s insurer, MACo, accepted Caldwell’s claim and paid his medical and wage-loss benefits.
¶5 Caldwell has worked for 57 years of his life. He stopped working only due to his debilitating injury. Caldwell served in the U.S. Army for 25 years and retired with a full military pension at age 44. Caldwell worked in livestock ranching, resort management, and mining between the ages of 44 and 62. Caldwell began drawing social security retirement benefits at age 62. Caldwell continued working as a mining supervisor until age 74, when he began full-time employment as the Ravalli County airport manager. He earned more than $25,000 per year as the manager.
¶6 Caldwell reached medical stability from his head injuries on February 11, 2008. He asked MACo at that point to initiate rehabilitation services under § 39-71-1006, MCA. Caldwell sought to gain training that would enable him to re-enter the workforce. MACo denied Caldwell rehabilitation benefits based on § 39-71-710, MCA.
¶7 Caldwell challenged the constitutionality of § 39-71-710, MCA, on the basis that the statute’s categorical termination of benefits based on a claimant’s eligibility for social security violated equal protection principles. The WCC agreed. The WCC concluded that § 39-71-710, MCA, created two similarly situated classes and treated them disparately without being reasonably related to a legitimate government interest. MACo appeals the WCC’s determination.
STANDARD OF REVIEW
¶8 We review for correctness the WCC’s conclusion of law that involves a constitutional issue. Henry v. St. Compen. Ins. Fund, 1999 MT 126, ¶ 10, 294 Mont. 449, 982 P.2d 456.
DISCUSSION
¶9 Does the categorical denial of rehabilitation benefits to a workers’ compensation claimant violate equal protection when the basis for denial turns solely on the claimant’s age-based eligibility for social security benefits?
¶10 Section 39-71-710, MCA, deems “retired” any disabled worker eligible for social security retirement benefits. The statute eliminates permanent partial disability benefits, permanent total disability benefits, and rehabilitation benefits for those disabled workers deemed “retired” by operation of the statute. Section 39-71-710, MCA. Injured workers have challenged the constitutionality of § 39-71-710, MCA, *143 twice in the last seven years. Reesor v. Mont. St. Fund, 2004 MT 370, 325 Mont. 1, 103 P.3d 1019; Satterlee v. Lumberman’s Mut. Cas. Co., 2009 MT 368, 353 Mont. 265, 222 P.3d 566.
¶11 This Court held in Reesor that § 39-71-710, MCA, violated equal protection as to claimants who had been denied permanent partial disability benefits based solely on their eligibility for social security benefits. Id. at ¶ 25. This Court held in Satterlee, in contrast, that the categorical elimination of permanent total disability benefits passed constitutional review based on the possibility that permanent total disability benefits could transform into a lifetime benefit. Id. at ¶ 28. Caldwell and MACo now present the Court with an equal protection challenge as to the third kind of benefit-rehabilitation benefits-categorically eliminated by § 39-71-710, MCA.
¶12 A worker injured on the job may recover rehabilitation benefits designed to return the disabled worker to work. Sections 39-71-1006, -1011(4), MCA. The statute limits to 104 weeks a disabled worker’s right to receive rehabilitation benefits at the worker’s temporary total disability rate. Section 39-71-1006(2), MCA. A disabled worker can receive additional costs for tuition, fees, books, and other retraining expenses. Section 39-71-1006(3), MCA.
¶13 A disabled worker must see a rehabilitation provider and establish a rehabilitation plan in order to determine the worker’s eligibility for rehabilitation benefits and in order to determine the extent of benefits available. Section 39-71-1006(l)(b)-(c), MCA. The disabled worker’s rehabilitation plan must consider the worker’s “age, education, training, work history, residual physical capacities, and vocational interests.” Section 39-71-1006(l)(c), MCA. A disabled worker who seeks rehabilitation benefits must have a rehabilitation provider certify that the disabled worker has “reasonable vocational goals and reasonable reemployment opportunity.” Section 39-71-1006(l)(b), MCA. Caldwell would have been entitled to seek rehabilitation benefits subject to the qualifications in § 39-71-1006, MCA, similar to any younger worker disabled on the job, but for the categorical elimination of rehabilitation benefits for older workers in § 39-71-710, MCA.
¶14 Article II, Section 4 of the Montana Constitution provides that “[t]he dignity of the human being is inviolable. No person shall be denied the equal protection of the laws.” Equal protection provides a check on governmental action that treats similarly situated persons in an unlike manner. Oberson v. U.S. Dept. of Agric., 2007 MT 293, ¶¶ 18-19, 339 Mont. 519, 171 P.3d 715; Reesor, ¶ 15. We follow a three-step process to analyze an equal protection claim. Satterlee, ¶ 15.
*144 ¶15 1. Whether the challenged statute creates similarly situated classes.
¶16 We first consider whether the governmental action creates classes of similarly situated persons and treats them in an unequal manner. Id. The parties concede, and we agree, that § 39-71-710, MCA, creates two similarly situated classes and treats them differently. As the WCC concluded, the classes consist of (1) those vocational rehabilitation eligible claimants who are eligible to receive social security retirement benefits, and (2) those who are not eligible. See Reesor, ¶¶ 10, 12; Satterlee, ¶ 15.
¶17 Amicus Montana State Fund (MSF) argues that § 39-71-710, MCA, does not create two similarly situated classes. MSF agrees that the statute creates two classes, but argues that those classes consist of persons “in” the workforce and persons “out” of the workforce. MSF argues that those “in” the workforce cannot be situated similarly to those “out” of the workforce. MSF’s argument misses the mark.
¶18 Caldwell challenges § 39-71-710, MCA, precisely because it deems him “out” of the workforce based solely on his age-defined eligibility for social security benefits. We reject here, as we did in Reesor and Satterlee, amicus MSF’s argument that § 39-71-710, MCA, does not create similarly situated classes. Reesor, ¶¶ 11-12; Satterlee, ¶ 16. Section 39-71-710, MCA, creates two classes out of similarly situated claimants who have suffered work-related injuries, could not return to their former jobs, had permanent physical impairment ratings, and must rely on the Workers’ Compensation Act as their exclusive remedy. Reesor, ¶ 12; Satterlee, ¶ 16. Caldwell and MACo correctly assess that § 39-71-710, MCA, creates two classes out of similarly situated persons, distinguished only by the age-based deemed “retired” provision of § 39-71-710, MCA.
¶19 We do not operate on a blank slate regarding the appropriate classification for our equal protection analysis. Oberson, ¶ 19. We begin by considering “the statute’s purpose in order to determine the threshold question of whether the statute created a discriminatory classification-i.e. a classification that treats two or more similarly situated groups in an unequal manner.” Oberson, ¶ 19. As we concluded in Reesor and Satterlee, age represents “the only identifiable distinguishing factor between the two classes” created by § 39-71-710, MCA. Reesor, ¶ 12; Satterlee, ¶ 16. “Furthermore,” as this Court stated in Reesor, “chronological age and the corresponding eligibility for social security retirement benefits is unrelated to a person’s ability to engage in meaningful employment.” Reesor, ¶ 12.
¶20 2. The appropriate level of constitutional scrutiny.
*145 ¶21 We next determine the level of scrutiny to apply to the challenged legislation. Reesor, ¶ 13. The parties have not asked the Court to apply a stricter standard of review than rational basis. The parties dispute only the third step of the equal protection analysis which considers whether the challenged governmental action passes constitutional scrutiny, in this case, rational basis review.
¶22 3. Evaluating this constitutional challenge under rational basis.
¶23 Rational basis requires that § 39-71-710, MCA, bear a rational relationship to a legitimate governmental interest. Satterlee, ¶ 18. We recently have considered the governmental interests underlying § 39-71-710, MCA, in Reesor and Satterlee. Reesor, ¶¶ 17-24; Satterlee, ¶¶ 25-30.
¶24 The claimant in Reesor had turned age 65 and had begun receiving social security retirement benefits about eight months before his work-related injury. Id. at ¶ 3. The claimant, Dale Reesor, received temporary total disability benefits and an impairment award from his employer’s insurer, MSF. Id. at ¶ 4. MSF denied the claimant permanent partial disability benefits, however, based on the categorical elimination of such benefits in § 39-71-710, MCA. Id. at ¶ 5.
¶25 A permanent partial disability exists if a worker has a permanent impairment of the worker’s ability to work that causes actual wage loss, but does not preclude the worker from returning to work in some capacity. Section 39-71-116(24), MCA. Montana law limits permanent partial disability benefits to a period of 375 weeks and to a percentage of the worker’s lost wages. Section 39-71-703, MCA. Reesor challenged the fact that the statute allows the award of permanent partial disability benefits to younger workers, but denies them to older workers deemed “retired” based on social security eligibility. Reesor claimed that this disparate treatment violated his right to equal protection. Id. at ¶ 8. The Court agreed and concluded that no rational basis existed to award permanent partial disability benefits to a 45-year-old injured worker, but to deny those same benefits to a 65-year-old worker with an identical injury. Id. at ¶ 23.
¶26 The Court stated broadly that “no rational basis” existed “to deny a class of injured workers a category of benefits based upon their age.” Reesor, ¶ 23. The Court departed from this broad statement in Satterlee. The Court concluded in Satterlee that the categorical age-based elimination of permanent total disability benefits in § 39-71-710, MCA, rationally related to the legitimate governmental interest of providing wage-loss benefits that bear a reasonable relationship to actual wages lost. Satterlee, ¶ 28.
*146 ¶27 The claimants in Satterlee had suffered work-related injuries for which they received permanent total disability benefits. Satterlee, ¶ 5. An injured worker has a permanent total disability if the worker’s injury has foreclosed the worker’s reasonable prospect of physically performing regular employment. Section 39-71-116(25), MCA. A worker with a permanent total disability must be paid permanent total disability benefits for the duration of the worker’s permanent total disability. Section 39-71-702(1), MCA. The Satterlee claimants’ award of benefits terminated upon becoming eligible for social security benefits pursuant to § 39-71-710, MCA. Id. at ¶ 5. The claimants challenged the categorical elimination of permanent total disability benefits on equal protection grounds. Id. at ¶ 6. The Court concluded that “it is rational for the workers’ compensation system to terminate [permanent total disability] benefits at a time when, statistically, most people’s work-lives have ended.” Id. at ¶ 28.
¶28 Reesor concluded that the categorical elimination in § 39-71-710, MCA, violated equal protection, while Satterlee concluded that it survived constitutional review. Satterlee did not overrule Reesor or signify some new path upon which this Court would embark in our equal protection jurisprudence. The Court’s dispositions instead turned on the differences between the purposes and entitlement schemes of the varying kinds of benefits. Satterlee, ¶ 27. The Court determined that “PPD benefits and PTD benefits serve very different purposes and employ very different entitlement schemes.” Id. The Court further explained that the “difference between the timeframes over which PPD and PTD benefits are meant to serve” constituted the critical distinction for purposes of the equal protection analysis. Id.
¶29 The Court in Satterlee did not even “equate Reesor with the case at bar.” Id. The Court concluded that each class of benefits was “simply too different and serve[s] such divergent purposes that equating” them would be inappropriate. Id. at ¶ 24. Permanent partial disability benefits serve the purpose of restoring a claimant to a pre-accident wage level by providing wage-loss benefits, but only for 375 weeks. Satterlee, ¶ 23; § 39-71-703, MCA. Permanent total disability benefits serve to assist a disabled worker who cannot ever return to work for the duration of his or her injury. Satterlee, ¶ 23; § 39-71-702, MCA. The court focused on the fact that permanent total disability benefits did not “terminate after a limited number of weeks,” but assisted “the worker over the course of his or her work life.” Satterlee, ¶ 27. As a result, the Court determined that the age-based categorical elimination in § 39-71-710, MCA, constituted a “sufficiently rational means of ensuring that PTD benefits [did] not become a lifetime *147 benefit.” Satterlee, ¶¶ 27-28. The Court recognized the legitimate governmental interest in not allowing permanent total disability-benefits to “run on until the claimant’s death.” Id. at ¶ 28.
¶30 Montana law limits a worker’s eligibility for rehabilitation benefits, like the limitation for permanent partial disability benefits, to a set number of weeks. Section 39-71-1006, MCA. A disabled worker can receive rehabilitation benefits for a maximum of 104 weeks. Id. No risk exists that rehabilitation benefits could “run on until the claimant’s death” or transform into a “lifetime benefit.” Satterlee, ¶ 28.
¶31 In addition to considering the entitlement scheme of rehabilitation benefits, we must consider the purposes served by rehabilitation benefits. Satterlee, ¶ 27. We already have concluded that § 39-71-105(3), MCA, provides the policy statement for the state’s interest underlying rehabilitation benefits. Henry, ¶ 39. Section 39-71-105(3), MCA, sets forth the policy of the workers’ compensation system “to return a worker to work as soon as possible.” The statute recognizes that a work-related injury “has a negative impact on the worker, the worker’s family, the employer, and the general public.” Section 39-71-105(3), MCA. Rehabilitation benefits advance this stated policy by setting the worker on a rehabilitation plan that assists the worker “in acquiring skills or aptitudes to return to work” and “reasonably reduce[] the worker’s actual wage loss.” Section 39-71-1011(4), MCA.
¶32 Critical differences exist among the entitlement schemes and purposes underlying rehabilitation benefits, permanent partial disability benefits, and permanent total disability benefits. These differences guide our analysis as to whether the categorical elimination of rehabilitation benefits in § 39-71-710, MCA, violates equal protection. We turn to consider the governmental interests underlying § 39-71-710, MCA, and whether the categorical elimination of rehabilitation benefits for older workers rationally relates to those interests.
¶33 a. Legitimate governmental interests served by § 39-71-710, MCA.
¶34 Cost containment of the workers’ compensation system presents a legitimate governmental interest. Satterlee, ¶ 29. The legislature often pursues its interest in controlling the costs of the workers’ compensation system. Id. These pursuits lie within constitutional authority so long as the legislature’s attempts to improve the viability of the workers’ compensation system follow rational means and so long as “cost containment is not the sole reason for disparate treatment.” Id. If the Court permitted otherwise, “cost containment” alone could justify nearly every legislative enactment without regard for the guarantee for equal protection of the law. Henry, ¶ 40 (citing Heisler *148 v. Hines Motor Co., 282 Mont. 270, 283, 937 P.2d 45, 52 (1997)).
¶35 The Court in Henry recognized that cost-control alone cannot justify disparate treatment that “violates an individual’s right to equal protection of the law.” Id. Not surprisingly, discrimination in the form of “offering services to some while excluding others for any arbitrary reason, will always result in lower costs.” Id. We must scrutinize attempts to disguise violations of equal protection as legislative attempts to “contain the costs” or “improve the viability” of the worker’s compensation system. Cost alone does not justify the disparate treatment of similar classes. Satterlee, ¶ 29.
¶36 The WCC concluded that § 39-71-105(3), MCA, sets forth the public policy for rehabilitation benefits and that terminating rehabilitation benefits “[flew] in the face of this stated legislative objective.” MACo faults the WCC for focusing solely on the policy statement in § 39-71-105(3), MCA. We agree insofar as § 39-71-105(3), MCA, provides the policy statement for providing rehabilitation benefits, as opposed to the policy statement for the elimination of rehabilitation benefits in § 39-71-710, MCA. Caldwell has challenged the constitutionality of § 39-71-710, MCA. The WCC correctly looked to the policy statement in § 39-71-105(3), MCA, however, to consider whether the categorical elimination in § 39-71-710, MCA, rationally relates to the governmental interests served by rehabilitation benefits.
¶37 MACo and amicus MSF argue that several additional legitimate governmental interests, independent of the interest in cost-containment, support the categorical elimination. MACo argues that the legislature has a legitimate interest in (1) creating a wage replacement system, (2) assisting the worker at a reasonable cost to the employer, (3) controlling the costs of the workers’ compensation program in order to continue providing benefits, and (4) avoiding duplication or overlapping of benefits. Amicus MSF adds that the legislature has a legitimate interest in (5) providing wage-loss benefits that bear a reasonable relationship to actual wages lost, (6) creating reasonably constant rates for employers, and (7) tailoring benefit entitlement to need. We address these purported interests in turn.
¶38 First we conclude that the governmental interest in creating a wage replacement system bears little relevance in the context of rehabilitation benefits. Section 39-71-105(1), MCA, sets forth the governmental interest in creating a wage replacement system. Reesor, ¶ 18. A related legitimate governmental interest exists in providing wage-loss benefits that bear a reasonable relationship to actual lost wages. Satterlee, ¶¶ 30-31. Rehabilitation benefits do not replace lost wages, however, and should be distinguished from the wage *149 replacement system at issue in Reesor and Satterlee. A disabled worker like Caldwell could receive temporary total disability, permanent total disability, permanent partial disability, or temporary partial disability benefits to replace his or her lost wages. Sections 39-71-701 to -703, - 712, MCA. In contrast, rehabilitation benefits, like medical benefits, disfigurement benefits, or funeral benefits, do not replace lost wages. Sections 39-71-704, -708, -725, MCA. The elimination of rehabilitation benefits cannot be understood as serving, or even relating to, the governmental interest in creating a wage-replacement system that bears a reasonable relationship to actual wages lost. We finally note that MACo accepted and paid Caldwell’s medical and wage-loss benefits.
¶39 We similarly reject the notion that the governmental interest in providing reasonably constant rates to employers will be served by the categorical elimination of rehabilitation benefits. Section 39-71-105(4), MCA, contains the policy statement about “reasonably constant rates.” That policy statement relates to the interest in creating a “primarily self-administering” workers’ compensation system that “minimize[s] reliance upon lawyers and the courts.” Section 39-71-105(4), MCA. We specifically reject the suggestion that the categorical elimination of rehabilitation benefits serves to provide reasonably constant rates. Eliminating rehabilitation benefits for older workers might constantly lower rates, but that interest simply duplicates the cost-containment interest already discussed.
¶40 We also have recognized that “assisting the worker at a reasonable cost to the employer” presents a legitimate governmental interest in equal protection claims. Satterlee, ¶ 30. We disagree that eliminating rehabilitation benefits relates to assisting the worker at a reasonable cost to the employer. We particularly reject the argument that “reasonable cost to the employer” always means “lower cost to the employer.” Such an argument does not constitute a legitimate governmental interest separate from the cost-containment interest.
¶41 MACo argues that avoiding the duplication or overlapping of benefits serves as a reasonable and permissive legislative objective. MACo argues that it would be irrational to allow claimants to receive both social security and rehabilitation benefits. We rejected this argument in Reesor when we pointed out that no coordination of benefits exists between the Workers’ Compensation Act and the social security system. Reesor, ¶¶ 20-24. Caldwell’s social security benefits will not provide him with resources to receive rehabilitation benefits that will return him to work after being disabled on the job as an employee for the Ravalli County airport. The Dissent elevates *150 generalized statements of the law from Larson’s Workers’ Compensation Law and the Kentucky Supreme Court above decisions of this Court. Dissent, ¶ 68. We addressed the same “duplication of benefits” argument in Reesor. Reesor, ¶¶ 20-24. We explained that “social security retirement benefits are not wage loss benefits” and do not offset one another. Id. at ¶ 24.
¶42 The Dissent makes no attempt to explain how the categorical elimination of rehabilitation benefits “minimizets] overlap” of the income a person might receive from social security. The Dissent fails to show how a person’s social security income “offset[s]” the categorical denial of rehabilitation benefits for older workers. Moreover, the Dissent makes no effort to explain why rehabilitation benefits should be treated like the permanent total disability benefit in Satterlee rather than the permanent partial disability benefit in Reesor.
¶43 MACo cites Stratemeyer v. Lincoln Co., 259 Mont. 147, 154, 855 P.2d 506, 511 (1993), for the argument that a legitimate governmental interest exists to control costs in order to continue providing benefits. MACo’s argument misrepresents the actual statements in Stratemeyer that identified “controlling the costs of the program and providing benefits” as a legitimate governmental interest. We know of no authority to support the argument that the legislature can eliminate benefits from one class of people in order to continue providing benefits to another class of similarly situated people.
¶44 We likewise reject amicus MSF’s “tailoring benefit entitlement to need” argument. MSF cites no authority for its tailoring argument, except two paragraphs out of Satterlee. Those paragraphs do not recognize a “tailoring” interest or any additional legitimate governmental interest not already discussed. We reject the suggestion that the legislature constitutionally can eliminate rehabilitation benefits for older workers so as to “tailor” or provide benefits to those in “need,” which presumably means younger workers.
¶45 Immediately beneath the surface of MACo’s and MSF’s “best allocation” and “tailoring” arguments lurks the belief that society should not rehabilitate older people because the return on the investment may not be as high. This bias also permeates the Dissent’s reasoning that the legislature may “allocate resources toward those who, statistically speaking, will use them,” Dissent, ¶ 67, and that “the legislature may reasonably determine that retraining is most important for those workers with a long work life ahead of them and may channel resources toward that group of workers.” Dissent, ¶ 71.
¶46 The Dissent’s approach would permit the legislature to provide benefits unequally to similarly situated persons so long as “empirical *151 evidence” or statistics supported the legislature’s decision. We reject the notion that the legislature acts rationally when it categorically withholds benefits from a similarly situated minority group because, “statistically speaking,” most people’s work life ends upon eligibility for social security. Dissent, ¶ 65. The statistical majority holds no monopoly on equal protection guarantees.
¶47 The Dissent’s reasoning begs the question of whether the constitutional right to equal protection hinges on the most recent labor statistics of the working elderly or on Congress’s decision to raise the age eligibility of the social security system. Our equal protection analysis does not allow the legislature to violate the equal protection rights of those persons who, statistically speaking, represent the minority of persons who must continue working at ages beyond eligibility for social security because they could not otherwise provide for themselves or their families.
¶48 MACo and MSF have argued that several legitimate governmental interests exist in addition to the legitimate governmental interest in cost-containment of the workers’ compensation system. The other interests they have offered either (1) duplicate the cost-containment interest or (2) bear no relation to the elimination of rehabilitation benefits in § 39-71-710, MCA. “Cost alone is insufficient to justify the disparate treatment of similar classes.” Satterlee, ¶ 29. The categorical elimination of rehabilitation benefits in § 39-71-710, MCA, serves no legitimate governmental interest, other than cost-containment, and therefore violates equal protection.
¶49 b. Whether § 39-71-710, MCA, rationally relates to any legitimate governmental interest.
¶50 The WCC concluded that the automatic termination of rehabilitation benefits in § 39-71-710, MCA, did not rationally relate to any legitimate governmental interest. We agree that categorical elimination of rehabilitation benefits in §39-71-710, MCA, based solely on age-defined eligibility for social security, does not rationally relate to any legitimate governmental interest. Reesor, ¶¶ 19, 23. Eligibility for social security benefits bears no rational relationship to a worker’s ability or willingness to return to work. Id. at ¶ 12. Social security eligibility turns solely on a person’s age and whether he or she has accrued enough social security earnings. 20 C.F.R. § 404.310 (2011).
¶51 Caldwell’s work history demonstrates the irrationality of categorically eliminating rehabilitation benefits once a person becomes eligible for social security. Caldwell served the workforce for 15 years after becoming eligible to draw social security benefits and for 33 years after “retirement” from the U.S. Army. Caldwell’s entitlement to *152 rehabilitation benefits will be limited by consideration of his age, residual physical capacities, and vocational interests. Section 39-71-1006(l)(c), MCA. A rational basis does not support the categorical elimination of rehabilitation benefits in § 39-71-710, MCA. Section 39-71-710, MCA, violates the Equal Protection Clause of the Montana Constitution insofar as it deems disabled workers ineligible to receive rehabilitation benefits based on their eligibility for social security benefits.
¶52 We affirm the judgment of the WCC.
CHIEF JUSTICE McGRATH, JUSTICES COTTER, WHEAT and NELSON concur.